Citation Nr: 1826252 
Decision Date: 04/30/18 Archive Date: 05/07/18

DOCKET NO. 13-21 527 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Louisville, Kentucky


THE ISSUE

Entitlement to service connection for a urinary/rectal/kidney disorder, to include as due to contaminated water exposure at Camp Lejeune.


REPRESENTATION

Veteran represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

H. Yoo, Counsel

INTRODUCTION

The Veteran served on active duty from April 1984 to March 1991. 

This case comes before the Board of Veterans' Appeals (Board) on appeal from a December 2011 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Louisville, Kentucky. 

A videoconference hearing was held before the undersigned Veterans Law Judge in July 2014. A transcript of the hearing is of record.

Additionally, in May 2015 the Board remanded the matter for further development. As the requested development regarding the Veteran's claim has been completed, this matter is now properly returned to the Board for adjudication. See Stegall v. West, 11 Vet. App. 268 (1998).


FINDING OF FACT

The Veteran does not have, nor has she had at any time proximate to, or during the course of this appeal, a current diagnosis of a urinary, rectal, or kidney disorders.


CONCLUSION OF LAW

The criteria for service connection for a urinary/rectal/kidney disorder, to include as due to contaminated water exposure at Camp Lejeune have not been met. 38 U.S.C. §§ 1101, 1110, 1131, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303 (2017).



REASONS AND BASES FOR FINDING AND CONCLUSION

I. The Veterans Claims Assistance Act of 2000

Neither the Veteran nor his representative has raised any issues with the duty to notify or duty to assist. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board"); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to a duty to assist argument).

The Veteran also offered testimony before the undersigned Veterans Law Judge at a Board hearing in July 2014. The Board finds that all requirements for hearing officers have been met. 38 C.F.R. § 3.103(c)(2) (2017); Bryant v. Shinseki, 23 Vet. App. 488 (2010). To the extent that any evidentiary deficiency was noted, the Board finds that it has been cured on remand as there has been compliance with the prior May 2015 remand directives. See Stegall v. West, 11 Vet. App. 268 (1998).

II. The Merits of the Claim

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 1131 (2012); 38 C.F.R. § 3.303(a) (2017). To establish a right to compensation for a present disability, a Veteran must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service - the so-called "nexus" requirement. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2009) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)). Service connection may be granted for any disease initially diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d) (2017). 

In addition, service connection for certain chronic diseases, may be established on a presumptive basis by showing that the condition manifested to a degree of 10 percent or more within one year from the date of separation from service. 38 U.S.C. §§ 1101, 1112, 1113, 1131, 1137 (2012); 38 C.F.R. §§ 3.307, 3.309(a) (2017); Fountain v. McDonald, 27 Vet. App. 258, 271-72 (2015). Although the disease need not be diagnosed within the presumptive period, it must be shown, by acceptable lay or medical evidence, that there were characteristic manifestations of the disease to the required degree during that time. 38 U.S.C. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309(a).

The Director of Compensation and Pension Service issued a Training Letter 10-03 in April 2010 (which has been rescinded due to its incorporation into the M21-1 as part of the "Live Manual" project) in which it was acknowledged that persons residing or working at Camp Lejeune from the 1950s to the mid-1980s were potentially exposed to drinking water contaminated with volatile organic compounds. Two of the eight water treatment facilities supplying water to the base were contaminated with either trichloroethylene (TCE) or tetrachloroethylene (perchloroethylene, or PCE) from an off-base dry cleaning facility. The Department of Health and Human Services' Agency for Toxic Substances and Disease Registry (ATSDR) estimated that TCE and PCE drinking water levels exceeded current standards from 1957 to 1987 and represented a public health hazard. In addition to TCE and PCE, ATSDR has also indicated that high concentrations of benzene, Vinyl Chloride, and trans-1, 2-dichloroethylene (1, 2-DCE) were detected in the drinking water system.

The National Academy of Sciences' National Research Council (NRC) and the ATSDR have undertaken studies to assess the potential long-term health effects for individuals who served at Camp Lejeune during the period of water contamination. In the resulting report, Contaminated Water Supplies at Camp Lejeune, Assessing Potential Health Effects (June 2009), the NRC reviewed previous work done by the ATSDR, including computerized water flow modeling, and concluded that additional studies may not produce definitive results because of the difficulties inherent in attempting to reconstruct past events and determine the amount of exposure experienced by any given individual. To address potential long-term health effects, the NRC focused on diseases associated with TCE, PCE, and other volatile organic compounds (VOC). 

Notably, the following diseases shall, unless rebutted by affirmative evidence, be service-connected even though there is no record of such disease during service: (1) Kidney cancer, (2) Liver cancer, (3) Non-Hodgkin's lymphoma, (4) Adult leukemia, (5) Multiple myeloma, (6) Parkinson's disease, (7) Aplastic anemia and other myelodysplastic syndromes, and (8) Bladder cancer. 38 U.S.C. § 1112; 38 C.F.R. § 3.309 (f) (effective March 14, 2017). The Veteran does not have a diagnosis that is a recognized disease associated with Camp Lejeune Contaminated Water (CLCW). 38 U.S.C. § 1112; 38 C.F.R. § 3.309(f) (effective March 14, 2017).

The Board has reviewed all of the evidence in the Veteran's claims file, with an emphasis on the evidence relevant to this appeal. Although the Board has an obligation to provide reasons and bases supporting its decision, there is no need to discuss, in detail, every piece of evidence of record. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Hence, the Board will summarize the relevant evidence where appropriate and the analysis below will focus specifically on what the evidence shows, or fails to show, as to the claim decided herein. 

When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C. § 5107 (b) (2012); 38 C.F.R. § 3.102 (2017). When all of the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the veteran prevailing in either event, or whether a fair preponderance of the evidence is against the claim, in which case the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990).

The Veteran contends he has had urinary/rectal/kidney disorder as a result of exposure to contaminated water at Camp Lejeune, North Carolina. Review of the claims file reveals that the Veteran served for a period of time at Camp Lejeune from July 1984 to December 1984.

The Veteran's service treatment records do not show any symptoms, complaints, diagnosis, or treatment for urinary, rectal, or kidney disorder. In addition, post-service treatment records are absent of any treatment or diagnosis for urinary, rectal, or kidney disorder.

A July 2011 VA examiner found that there was no current hematuria or renal, bladder, or kidney cancer. The examiner noted that the Veteran had a history of episodic hematuria since 2007 which was not caused by or a result of his exposure to contaminated water at Camp Lejeune. In a 2015 remand, the Board found that although the examiner did address some of the pertinent medical issues in this case, the opinion does not address whether the hematuria could be otherwise related to service. In addition, this examination was provided based on the original urinary and rectum bleeding claim. The Veteran indicated during the Board hearing that his VA treatment provider told him that he had a protein leak from his kidney causing the bleeding. In light of the expanded claim, the Board determined a new examination considering the complete history of the development of the claimed disorder was helpful in this case. 

Another VA opinion was obtained in August 2017. Upon review of the evidence of record, the VA examiner opined that there were no urinary, rectal or kidney disorders. The VA examiner then stated that there can be no nexus between a non-existent diagnosis and any exposure, including exposure to CLCW. The VA examiner noted that a review of the Veteran's multiple laboratory test results from 1995 to 2017were normal through this twenty two year period. This demonstrated no renal insufficiency, chronic kidney disease, and loss of kidney function. The VA examiner also noted that during this time sixteen urinalyses for blood were negative. In June 1999 and November 2008, the Veteran's urinalysis revealed trace amount of protein, with higher and measurable levels of protein in 2008, however, the remaining values for urine protein over the twenty two years were negative. This indicated normal findings. 

The VA examiner acknowledged several causes for isolated elevated urine proteins but noted that the importance of urine protein was in persistence, quantification, and analysis. However, since the two elevated levels in 2008, the Veteran had four more recent tests that revealed no urine protein, further supporting the absence of any ongoing chronic kidney problem. The examiner then noted that a May 2017 VA treatment record revealed no mention of blood in the urine, bleeding from the rectum, or any problem related to the urinary tract, or the rectum or the kidneys. The VA examiner cited to the Review of Systems which "includes denial of hemorrhoids, constipation, diarrhea or abdominal pain, as well as hematuria, dysuria, urgency or incontinence. Thus, providing further evidence that at present the Veteran does not have a urinary or rectal or kidney problem." 

Having reviewed the evidence of record, the Board finds that service connection for urinary/rectal/kidney disorder, to include as being related to exposure to contaminated water at Camp Lejeune, North Carolina, is not warranted.

Service connection presupposes a diagnosis of a current disability. See 38 C.F.R. §§ 3.102, 3.303 (2017); Brammer v. Derwinski, 3 Vet. App. 223 (1995); Rabideau v. Derwinski, 2 Vet. App. 141 (1992). Here the preponderance of the evidence is against finding that the Veteran's has a diagnosis of a urinary/rectal/kidney disorder. Significant weight is accorded to the August 2017 VA examination report, which was based upon a thorough examination of the Veteran and an analysis of the entire relevant history. See Prejean v. West, 13 Vet. App. 444, 448-9 (2000) (holding that factors for assessing the probative value of a medical opinion are the physician's access to the claims file and the thoroughness and detail of the opinion); Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008) (holding that it is the reasoning for the conclusion, not the mere fact that the claims file was reviewed, that contributes probative value to a medical opinion).

In assessing this claim, the Board has considered the Veteran's lay assertions. The Veteran is considered competent to report the observable manifestations of his claimed disability. See Charles v. Principi, 16 Vet. App. 370, 374 (2002) ("ringing in the ears is capable of lay observation"); Layno v. Brown, 6 Vet. App. 465, 469-70 (1994) (lay testimony iterating knowledge and personal observations of witness is competent to prove that claimant exhibited certain symptoms at particular time following service). However, the Veteran is not competent to opine on the diagnosis or etiology of his disability. In this case, the diagnosis and etiology of a urinary/rectal/kidney disorder is a complex medical question that is not within the competence of a layperson as it is not capable of lay observation; rather they are internal medical processes that require specialized diagnostic testing to detect. See Kahana v. Shinseki, 24 Vet. App. 428 (2011). 

In reaching these conclusions, the Board has considered the applicability of the benefit-of-the-doubt doctrine. As the preponderance of evidence is against the Veteran's claim, the doctrine does not apply, and the claim must be denied. 38 U.S.C. § 5107(b) (2012); 38 C.F.R. § 3.102 (2017).


ORDER

Entitlement to service connection for a urinary/rectal/kidney disorder, to include as due to contaminated water exposure at Camp Lejeune, is denied.




____________________________________________
K. MILLIKAN
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs