**Donald H. RABIDEAU, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

**No. 90–1296.**

United States Court of Veterans Appeals.

Submitted Aug. 13, 1991.

Decided Feb. 3, 1992.

As Amended Feb. 5, 1992.

As Amended April 8, and May 4, 1992.

Andrew H. Marshall (non-attorney practitioner), was on the brief, for appellant.

Robert E. Coy, Acting Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Jacqueline M. Sims, Washington, D.C., were on the pleading, for appellee.

Before KRAMER, MANKIN and STEINBERG, Associate Judges.

KRAMER, Associate Judge:

The Board of Veterans' Appeals (BVA) denied appellant's claim for service connection for hypertension. Because the BVA did not commit reversible error in its July 10, 1990, decision, that decision will be affirmed.

I.

Factual and Procedural Background

Appellant served on active duty with the Air Force from August 28, 1963, to August 25, 1967. R. at 7. His induction exam showed no abnormalities and his blood pressure was recorded as 120[systolic]/80[diastolic]. R. at 9, 10–13.

During service, his recorded blood pressure readings for systolics/diastolics were as follows:

September 8, 1965—130/80

May 25, 1966—120/78

December 8, 1966—144/78

January 10, 1967—130/90; 160/100; 120/80; 150/80

February 7, 1967—136/100

March 17, 1967—160/98

July 24, 1967—120/70

R. at 13–14, 18–20, 30–33, 38. The blood pressure reading recorded on February 7, 1967, was taken shortly after appellant had suffered a physical assault when leaving a cocktail lounge. R. at 32. With respect to the March 17, 1967, blood pressure reading, the examining doctor noted "blood pressure was elevated at 160–98[.] [H]owever, [of the] serial blood pressures [taken] in the hospital, [there] were many within normal range although some had systolics of 160 and diastolics in the 90 to 100 range." R. at 33. The blood pressure reading July 24, 1967, was taken at the time of appellant's discharge examination. Appellant was never given a diagnosis of high blood pressure in service.

In 1973, when appellant, who complained of a sore left ankle, was examined by the Veterans' Administration (now Department of Veterans Affairs) (VA), it was noted that his blood pressure (120/80) was normal as were his heart and blood vessels. R. at 37, 50.

On May 15, 1989, appellant, contending that he had numerous high readings during service, filed a disability compensation claim with the VA for high blood pressure and stroke. R. at 55, 57. In support of his claim, he submitted a statement from private Dr. Ronald A. Naumann who stated:

On August 9, 1989, Mr. Rabideau came under my care because of a brain hemorrhage. He was found to have a cerebral aneurysm which was successfully operated on. He had a rather stormy postoperative course with cerebro-vascular accident (stroke).

He was really quite devastated by this illness but has made a remarkable physical recovery and much emotional improvement as well.

R. at 50.

The VA Regional Office (RO) denied appellant's claim. R. at 61–63. Appellant appealed to the BVA on November 8, 1989, seeking a remand to the RO for the purpose of developing his claim. R. at 72–77.

The BVA affirmed the RO and implicitly denied remand, stating:

Although the veteran's service medical records show unexplained elevated blood pressure readings in January 1967 and March 1967, the veteran's blood pressure usually and at his July 1976 separation examination was within normal limits. The Board is of the opinion that the isolated elevated blood readings during service did not represent the onset of essential hypertension. Further, no medical evidence has been submitted to show the presence of essential hypertension since service....

. . . .

Essential hypertension has not been shown to have been present.

and concluding:

Essential hypertension was not incurred in or aggravated by active service nor may it be presumed to have been incurred therein.

*Donald H. Rabideau,* BVA 90–22663, 4–5 (July 10, 1990).

## II.

### Analysis

■ Title 38 C.F.R. § 4.104, Diagnostic Code (DC) 7101 (1991), which describes how ratings are to be assigned for hypertension, provides:

60 percent.... Diastolic pressure predominantly 130 or more and severe symptoms.

40 percent.... Diastolic pressure predominantly 120 or more and moderately severe symptoms.

20 percent.... Diastolic pressure predominantly 110 or more with definite symptoms.

10 percent.... Diastolic pressure predominantly 100 or more.

Thus, in order to be eligible for a minimal rating, a claimant must have a diastolic blood pressure which is "predominantly" 100 or more. The evidence of record from 1963 to the present contains only two blood pressure readings, both during service, which would qualify as evidence of hypertension, and one of such readings occurred after appellant was physically attacked.

In order for the veteran to be awarded a rating for service-connected hypertension, there must be evidence both of a service-connected disease or injury and a present disability which is attributable to such disease or injury. *See* 38 U.S.C. § 1131 (formerly § 331). Moreover, with regard to hypertension, under the ratings schedule, current disability must be shown to at least the minimum compensable degree (10%) as provided in 38 C.F.R. § 4.104, DC 7101, since the Code does not provide for a zero-percent rating for hypertension. Finally, since the schedular criteria for hypertension do not require residuals, a zero-percent rating would not be authorized under 38 C.F.R. §§ 3.357(a) and 4.31 (where minimum schedular evaluation requires residuals and the schedule does not provide a zero-percent evaluation, a zero-percent evaluation will be assigned when required residuals are not shown).

In the present case, there is a total lack of evidence of any hypertension existing since service. Thus, even if the BVA were to have concluded that the few elevated blood pressure readings in service represent the onset of hypertension, it would still have no basis to award a service-connected rating.

■ Furthermore, as to appellant's evidence of stroke, even assuming for pur-

poses of analysis that appellant was entitled to service connection for hypertension, there is no evidence causally linking such condition with appellant's stroke. Certainly, Dr. Naumann does not provide this nexus in his June 13, 1989, letter. R. at 50.

 Finally, in order to invoke the VA's duty to assist a claimant in developing the facts of his claim, the claimant bears the initial burden of submitting a well-grounded claim. *See Gilbert v. Derwinski,* 1 Vet. App. 49, 55 (1990); 38 U.S.C. § 5107(a) (formerly § 3007(a)). Because of the absence of any evidence of current hypertension and the absence of any linkage of appellant's 1989 stroke with such an undiagnosed condition, appellant's claim is not plausible and, therefore, not well-grounded. *See Moore v. Derwinski,* 1 Vet.App. 401, 405 (1991); *Murphy v. Derwinski,* 1 Vet. App. 78, 81 (1990). Therefore, the VA was under no duty to provide appellant with an examination or otherwise assist him in the development of his claim.

### III.

#### Conclusion

For the reasons stated above, the July 10, 1990, BVA decision is AFFIRMED.

*It is so Ordered.*