Citation Nr: 1532786 
Decision Date: 07/31/15 Archive Date: 08/05/15

DOCKET NO. 09-37 700 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Columbia, South Carolina


THE ISSUE

Entitlement to service connection for bilateral hearing loss.


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

M. Hannan, Counsel



INTRODUCTION

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The Veteran appellant had active service in the United States Air Force from May 1961 to May 1965. This matter originally came before the Board of Veterans' Appeals (Board) on appeal from a December 2008 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Columbia, South Carolina that, in part, denied the appellant's claim of entitlement to service connection for bilateral hearing loss.

The Board remanded the case for additional development in April 2014. The case has now been returned to the Board for appellate review. 

This appeal was processed using the VA paperless claims processing system. Accordingly, any future consideration of this appellant's case should take into account the existence of this electronic record. 


FINDING OF FACT

The evidence for and against the appellant's claim is at least in relative equipoise on the question of whether his currently diagnosed bilateral hearing loss is related to acoustic trauma in service.

CONCLUSION OF LAW

With resolution of reasonable doubt in the appellant's favor, the evidence is in equipoise and warrants service connection for bilateral hearing loss. 38 U.S.C.A. §§ 1101, 1131, 5102, 5103, 5103A, and 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.156, 3.303, 3.385 (2014). 


REASONS AND BASES FOR FINDING AND CONCLUSION

I. VA's Duty to Notify and Assist

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). The Board is granting in full the benefits sought on appeal (service connection) in relation to the hearing loss claim. Accordingly, any error committed with respect to either the duty to notify or the duty to assist was harmless and will not be further discussed. 

II. The Merits of the Claim

In adjudicating a claim, the Board determines whether (1) the weight of the evidence supports the claim or, (2) whether the weight of the "positive" evidence in favor of the claim is in relative balance with the weight of the "negative" evidence against the claim. The appellant prevails in either event. However, if the weight of the evidence is against the appellant's claim, the claim must be denied. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

In order to establish service connection for a claimed disability, the facts, as shown by evidence, must demonstrate that a particular disease or injury resulting in a current disability was incurred during active service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Furthermore, service connection may be granted for any disease diagnosed after service when all the evidence establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

To establish service connection for a disability, symptoms during service, or within a reasonable time thereafter, must be identifiable as manifestations of a chronic disease or permanent effects of an injury. Further, a present disability must exist and it must be shown that the present disability is the same disease or injury, or the result of disease or injury incurred in or made worse by the appellant's military service. Rabideau v. Derwinski, 2 Vet. App. 141, 143 (1992); 38 C.F.R. § 3.303(a).

A veteran's lay statements may be competent to support a claim for service connection by supporting the occurrence of lay-observable events or the presence of disability or symptoms of disability subject to lay observation. 38 U.S.C.A. § 1153(a); 38 C.F.R. §§ 3.303(a), 3.159(a); see Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006). Difficulty hearing is the sort of condition that is observable by a lay person. See also Davidson v. Shinseki, 581 F.3d 1313 (2009) (noting that a layperson may comment on lay-observable symptoms).

The appellant contends that he currently suffers from bilateral hearing loss due to in-service noise exposure while performing his duties as an Air Force aircraft maintenance specialist/crew chief. In fact, he is already service-connected for tinnitus based on acoustic trauma and he contends that his hearing was adversely affected by the same acoustic trauma that caused the service-connected tinnitus. The appellant's DD-214 and his written statements amply document his duties working with aircraft. Also, the appellant is competent to assert occurrence of an in-service injury. See, e.g., Grottveit v. Brown, 5 Vet. App. 91, 93 (1993). 

The determination of whether a veteran has a ratable hearing loss "disability" is governed by 38 C.F.R. § 3.385, which states that hearing loss will be considered to be a disability (for VA purposes) when the threshold level in any of the frequencies 500, 1000, 2000, 3000 and 4000 Hertz is 40 decibels or greater; or the thresholds for at least three of these frequencies are 26 decibels or greater; or speech recognition scores are less than 94 percent. 38 C.F.R. § 3.385. When audiometric test results at a veteran's separation from service do not meet the regulatory requirements for establishing a 'disability' at that time, he or she may nevertheless establish service connection for a current hearing disability by submitting evidence that the current disability is causally related to service." Hensley v. Brown, 5 Vet. App. 155, 160 (1993). The United States Court of Appeals for Veterans Claims (Court) held that the threshold for normal hearing is from 0 to 20 decibels and that higher threshold levels indicate some degree of hearing loss. Id. at 157. The Court further held that 38 C.F.R. § 3.385 operates only to establish when a hearing loss can be service connected. Id. at 159. It was also found that, regardless of when the criteria of 38 C.F.R. § 3.385 are met, a determination must be made as to whether the hearing loss was incurred in or aggravated by service.

As previously noted, the appellant served between 1961 and 1965. Prior to November 1967, audiometric test results were reported in standards set forth by the American Standards Association (ASA). Since November 1, 1967, those standards have been set by the International Standards Organization (ISO)-American National Standards Institute (ANSI). Unless otherwise noted, service department testing results dated October 31, 1967, or earlier, are assumed to be in ASA units. In order to facilitate data comparison, the ASA standards below have been converted to ISO-ANSI standards. 

The appellant underwent a service entrance examination in May 1961, and his ears were noted to be clinically normal on examination. Audiometric testing was accomplished. The results of the appellant's May 1961 audiometric testing puretone thresholds, in decibels and converted to ISO (ANSI) units, were as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
25
20
10
20
20
LEFT
25
20
25
25
25

The appellant underwent a hearing conservation evaluation in June 1961. Audiometric testing was accomplished. The results of the appellant's June 1961 audiometric testing puretone thresholds, in decibels and converted to ISO (ANSI) units, were as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
10
0
0
-5
0
LEFT
10
0
10
0
20

The appellant underwent another hearing conservation evaluation in April 1962. Audiometric testing was accomplished. The results of the appellant's April 1962 audiometric testing puretone thresholds, in decibels and converted to ISO (ANSI) units, were as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
25
15
0
15
5
LEFT
10
5
0
5
20

In addition, the left ear puretone threshold was 50 decibels at 6000 Hertz.

The appellant underwent a flying status examination in June 1962. Audiometric testing was accomplished. The results of the appellant's June 1962 audiometric testing puretone thresholds, in decibels and converted to ISO (ANSI) units, were as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
20
20
15
20
10
LEFT
15
20
15
15
10

The appellant underwent another flying status examination in February 1963. Audiometric testing was accomplished. The results of the appellant's February 1963 audiometric testing puretone thresholds, in decibels and converted to ISO (ANSI) units, were as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
10
5
0
N/A
N/A
LEFT
10
10
0
N/A
N/A

The appellant underwent another flying status examination in February 1964. Audiometric testing was accomplished. The results of the appellant's February 1964 audiometric testing puretone thresholds, in decibels and converted to ISO (ANSI) units, were as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
10
5
5
5
0
LEFT
10
5
5
5
0

The appellant underwent an annual examination in December 1964. Audiometric testing was accomplished. The results of the appellant's December 1964 audiometric testing puretone thresholds, in decibels and converted to ISO (ANSI) units, were as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
10
10
5
5
0
LEFT
10
10
5
5
35

In addition, the right ear puretone threshold was 20 decibels at 6000 Hertz and the left ear puretone threshold was 60 decibels at 6000 Hertz.

The appellant underwent a service separation examination in April 1965. Audiometric testing was accomplished. The results of the appellant's April 1965 audiometric testing puretone thresholds, in decibels and converted to ISO (ANSI) units, were as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
20
20
15
15
10
LEFT
20
20
15
15
25

The first post-service clinical documentation of the appellant's claimed hearing loss is found in the discharge summary report from the appellant's VA hospital stay that occurred in April 1983. The testing revealed sensorineural hearing loss in the left ear. Private audiometric testing accomplished in April 2000, indicated that the appellant had threshold results above 40 decibels in each ear at 4000 Hz; these results met the standard found in 38 C.F.R. § 3.385 for a current hearing loss disability for VA purposes. A May 2008 private audiologist report indicates that the appellant reported a long-standing history of hearing loss and that the appellant's bilateral hearing loss was related to his in-service noise exposure from jet engines.

The appellant was afforded a VA audiometric examination in November 2008; the examiner reviewed the appellant's claims file and medical records. The puretone threshold results from the November 2008 VA audiometric testing, in decibels, were as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
20
20
30
40
55
LEFT
20
10
20
45
70

Speech audiometry revealed speech recognition ability of 92 percent in the right ear and 91 percent in the left ear. Each ear met the standard found in 38 C.F.R. § 3.385 for a current hearing loss disability for VA purposes. 

The examining audiologist opined that, because the each ear showed normal hearing at entry and at separation, it was less likely than not that the current hearing loss was related to service. In November 2011, another VA audiologist opined that, as neither ear showed any significant permanent threshold shift to suggest permanent injury at separation and the hearing loss appeared long after service, it was less likely than not that the current hearing loss was related to service.

However, as previously noted, the Court has held that the threshold for normal hearing is from 0 to 20 decibels and that higher threshold levels indicate some degree of hearing loss. Hensley v. Brown, 5 Vet. App. 155, 157 (1993). Here, the appellant's separation examination showed levels higher than 20 decibels at 4000 and 6000 Hertz in the left ear. According to VA Training Letter 10-02, clinically normal hearing means the pure tone thresholds between frequencies of 250 and 8000 Hz are 0 to 25 decibels. See p. 16. Thus, the appellant exhibited abnormal hearing in his left ear at the time of separation. In addition, comparison of the February 1964 audiogram with the December 1964 audiogram reveals a shift in the left ear from zero to 35 decibels at 4000 Hz and a shift from 5 to 60 decibels at 6000 Hz. The appellant also exhibited a shift in the right ear from 10 to 20 decibels at 6000 Hz; that shift had only improved to 15 decibels as shown on the separation audiogram. Between December 1964 and April 1965, the appellant demonstrated a shift in the right ear from 10 to 20 decibels at 500 Hz and 1000Hz and from zero to 10 decibels at 4000 Hz. Furthermore, as pointed out by the VA audiologist who examined the appellant in May 2009, the appellant had temporary shifts of hearing in service. The examiner stated that temporary shifts may occur after exposure to excessive noise and that the appellant experienced acoustic trauma in service.

Viewing the evidence in the light most favorable to the appellant, the positive evidence of record consists of the fact that he currently suffers from bilateral sensorineural hearing loss (SNHL), that there is clinical evidence to the effect that exposure to acoustic trauma does cause SNHL and that there is objective evidence to support the appellant's reports of his exposure to acoustic trauma in service. The appellant's Air Force service records indicate that he was an aircraft maintenance specialist/crew chief. According to VA Fast Letter 10-35 (Sept. 2, 2010) (providing Duty MOS Noise Exposure Listing), if the duty position is shown to have a "Moderate" probability of exposure to hazardous noise, exposure to such noise will be conceded for purposes of establishing the in-service event; for example, aviation aircrewman, mechanical is a Navy MOS that is "highly probable" for exposure to hazardous noise.) Therefore, the Board accepts the appellant's assertions of in-service noise exposure as credible. In addition, the appellant has stated that he noticed hearing loss many years ago and he demonstrated abnormal hearing in his left ear in service and on the April 1965 audiogram. He also exhibited threshold shifts in each ear in service. 

The negative evidence of record consists of no clinical evidence of hearing loss until the April 1983 VA hospital discharge summary documented that the appellant had decreased hearing on the left and the negative VA audiology opinions rendered in November 2008, and May 2014. Once VA provides an examination in a service connection claim, the examination must be adequate or VA must notify the veteran why one will not or cannot be provided. Barr v. Nicholson, 21 Vet. App. 303, 311 (2007). "Without a medical opinion that clearly addresses the relevant facts and medical science, the Board is left to rely on its own lay opinion, which it is forbidden from doing." Stefl v. Nicholson, 21 Vet. App. 120, 124-25 (2007). In Barr, 21 Vet. App. at 311, the Court found that a medical examination was inadequate because the examiner did not provide an etiological opinion and did not review prior medical records. Here, the November 2008 opinion did not adequately addressed the threshold shifts the appellant had during service. In addition, neither audiologist discussed whether there was any relationship between the appellant's service-connected tinnitus and his hearing loss. The Board notes that "an associated hearing loss is usually present" with tinnitus. THE MERCK MANUAL, Sec. 7, Ch. 82, Approach to the Patient with Ear Problems. Tinnitus may occur as a symptom of nearly all ear disorders including sensorineural or noise-induced hearing loss. Id. "High frequency tinnitus usually accompanies [noise-induced] hearing loss." THE MERCK MANUAL, Sec. 7, Ch. 85, Inner Ear. Furthermore, each audiologist erroneously stated that no hearing loss was demonstrated in service. Thus, these VA opinions are of limited probative value. See Shipwash v. Brown, 8 Vet. App. 218, 222 (1995); Flash v. Brown, 8 Vet. App. 332, 339-340 (1995) (regarding the duty of VA to provide medical examinations conducted by medical professionals with full access to and review of a veteran's claims folder). 

On the other hand, the May 2009 VA audiologist opinion did discuss the appellant's threshold shifts in service. In addition, this audiologist opined that the appellant's tinnitus was a symptom associated with hearing loss and that the appellant's tinnitus was due to his noise exposure in service. Therefore, logically, if the tinnitus is service-connected then the hearing loss should also be service-connected because the tinnitus is a symptom associated with hearing loss.

Since hearing loss and threshold shifts were shown to exist in service, and since the appellant was exposed to acoustic trauma in service which caused tinnitus, these facts and the doctrine of reasonable doubt provide a proper basis for granting service connection for bilateral hearing loss. For these reasons, the Board finds that evidence for and against the appellant's claim is at least in relative equipoise on the question of whether the currently diagnosed bilateral hearing loss initially occurred in service or after service. The Board will resolve any doubt in the claimant's favor and finds that the appellant's bilateral hearing loss had its onset in service. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. 


ORDER

Service connection for bilateral hearing loss is granted.




____________________________________________
KATHLEEN K. GALLAGHER
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs