﻿Citation Nr: AXXXXXXXX
Decision Date: 05/02/19 Archive Date: 05/02/19

DOCKET NO. 181214-1825
DATE: May 2, 2019

ORDER

Service connection for a right ankle condition is denied.

Service connection for a left ankle condition is denied.

Service connection for a right knee condition is denied.

Service connection for a left knee condition is denied.

Service connection for a back condition is denied.

Service connection for residuals of a traumatic brain injury (TBI) is denied.

Service connection for bilateral hearing loss is denied.

A disability rating higher than 50 percent for posttraumatic stress disorder (PTSD) is denied.

Effective date prior to March 25, 2017 for service connection for PTSD is denied.

Effective date prior to March 25, 2017 for service connection for tinnitus is denied.

FINDINGS OF FACT

1. The preponderance of the evidence is against the finding of a right ankle disability.

2. The preponderance of the evidence is against the finding of a left ankle disability. 

3. The preponderance of the evidence is against the finding of a right knee disability.

4. The preponderance of the evidence is against the finding of a left knee disability.

5. The preponderance of the evidence is against the finding of a back disability.

6. The preponderance of the evidence is against the finding of residuals of a TBI. 

7. The medical evidence of record does not demonstrate a bilateral hearing loss disability, as defined by VA regulations. 

8. For the entire appeal period, the Veteran’s PTSD was manifested by occupational and social impairment with reduced reliability and productivity.

9. The RO received an intent to claim for service connection on March 25, 2017. Based on VA law, the earliest effective date for the Veteran’s claim for service connection for PTSD is on the day when the RO received the claim.

10. The RO received an intent to claim for service connection on March 25, 2017. The Veteran filed a supplemental claim for service connection for tinnitus on June 18, 2017. Based on VA law the earliest effective date is on March 25, 2017, when the Veteran filed what the RO considered an intent to file claim.

CONCLUSIONS OF LAW

1. The criteria for service connection for a right ankle condition have not been met. 38 U.S.C. §§ 1131, 1154(a), 5107(b) (2012); 38 C.F.R. §§ 3.102, 3.303(a) (2018).

2. The criteria for service connection for a left ankle condition have not been met. 38 U.S.C. §§ 1131, 1154(a), 5107(b) (2012); 38 C.F.R. §§ 3.102, 3.303(a) (2018).

3. The criteria for service connection for a right knee condition have not been met. 38 U.S.C. §§ 1131, 1154(a), 5107(b) (2012); 38 C.F.R. §§ 3.102, 3.303(a) (2018).

4. The criteria for service connection for a left knee condition have not been met. 38 U.S.C. §§ 1131, 1154(a), 5107(b) (2012); 38 C.F.R. §§ 3.102, 3.303(a) (2018).

5. The criteria for service connection for a back condition have not been met. 38 U.S.C. §§ 1131, 1154(a), 5107(b) (2012); 38 C.F.R. §§ 3.102, 3.303(a) (2018).

6. The criteria for entitlement to service connection for residuals of a TBI have not been met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. § 3.303 (2018).

7. The criteria for establishing entitlement to service connection for bilateral hearing loss have not been met. 38 U.S.C. §§ 1101, 1110, 1112, 1131, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2018). 

8. The criteria for a higher disability rating for PTSD have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.159, 4.3, 4.7, 4.126, 4.130, Part 4, Diagnostic Code 9411 (2018).

9. The criteria for an earlier effective date for the award of service connection for PTSD have not been met. 38 U.S.C. § 5110 (2012); 38 C.F.R. §§ 3.155, 3.156, 3.400 (2018).

10. The criteria for an earlier effective date for the award of service connection for tinnitus have not been met. 38 U.S.C. § 5110 (2012); 38 C.F.R. §§ 3.155, 3.400 (2018).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from August 2000 until August 2003.

The Board notes that the rating decision on appeal was issued in May 2018. On May 21, 2018 and May 24, 2018, the Veteran elected the modernized review system, acknowledging that the review of his appeal will be based upon the evidence submitted to VA as of the date of the election. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 19.2(d)). 

However, since the Veteran’s election of the modernized review system, new evidence was added to the claims file. Because the Veteran’s election was on May 21, 2018 for an earlier effective date and a higher increased rating for PTSD and May 24, 2018 for the remainder of the issues, the Board may not consider new evidence after May 21, 2018 and May 24, 2018 for the enumerated issues. 84 Fed. Reg. 138, 182 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 20.300); see also Public Law 115-55 (to be codified in USC 5104B(d)(The evidentiary record before the higher-level adjudicator shall be limited to the evidence of record in the agency of original jurisdiction decision being reviewed.).

The Veteran may file a Supplemental Claim and submit or identify this evidence. 84 Fed. Reg. 138, 182 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 3.2501). If the evidence is new and relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. Id. Specific instructions for filing a Supplemental Claim are included with this decision.

Service Connection

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. § 3.303. The three-element test for service connection requires evidence of (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the current disability and the in-service disease or injury. Shedden v. Principi, 381 F.3d 1163, 1166 -67 (Fed. Cir. 2004).

The Board notes that in this case the Veteran’s service treatment records for his period of active duty are incomplete. The RO made numerous attempts to obtain a complete copy of the Veteran’s military records, but the paper documents could not be found. See April 2018 Service Treatment Record Certification. When service records are incomplete, the Board has a heightened obligation to explain its findings and conclusions and carefully consider the benefit-of-the-doubt rule. See Cuevas v. Principi, 3 Vet. App. 542, 548 (1992); O’Hare v. Derwinski, 1 Vet. App. 365, 367 (1991). However, the case law does not lower the legal standard for proving a claim of service connection, but rather increases the Board’s obligation to evaluate and discuss in its decision all of the evidence that may be favorable to the Veteran. See Russo v. Brown, 9 Vet. App. 46 (1996). Moreover, there is no presumption, either in favor of the claimant or against VA, arising from missing records. See Cromer v. Nicholson, 19 Vet. App. 215, 217-18 (2005) (declining to apply an “adverse presumption” where records have been lost or destroyed while in government control which would have required VA to disprove a claimant’s allegation of injury or disease).

1.& 2. Entitlement to service connection for right and left ankle conditions is denied.

The first question for the Board is whether the Veteran exhibits a current disability for VA compensation purposes. 

In this case, the first element for service connection has not been met. Medical evidence indicates that the Veteran does not exhibit a right or left ankle disability; no diagnosis or impression of a disability was advanced by a medical examiner.

The Veteran’s medical evidence for his ankles reflect the following:

The Veteran’s July 2000 enlistment examination reflects normal lower extremity and feet clinical evaluation.

In an April 2018 VA examination report, after an in-person examination, VA examiner concluded with a diagnosis of normal left and right ankles. Pain in the right ankle was noted, and the Veteran reported that he experienced constant pain and that he could not work with pain. Range of motion measurements were all normal for the right ankle; no pain was noted on exam; no objective evidence of localized tenderness or pain on palpation of the joint or associated soft tissue was noted. Right ankle popping sound was noted at times while walking. Plantar flexion and dorsiflexion strength were 5 out of 5; there was no reduction in muscle strength. The Veteran reported that he had pain during flare ups. 

Range of motion of the left ankle was normal; pain was noted on exam but did not result in functional loss; there was evidence of pain with weight bearing or objective evidence of crepitus; there was no objective evidence of localized tenderness or pain on palpation of the joint or associated soft tissue. Plantar flexion and dorsiflexion strength were 5 out of 5; there was no reduction in muscle strength. The Veteran reported that he had pain during flare ups.

The April 2018 radiological report revealed no acute bone abnormality of the ankles. The examiner noted that there was no degenerative or traumatic arthritis documented in the ankle radiological report.

In April 2018, the VA examiner noted that the examination was in-person, he reviewed the record and opined that it was less likely as not that the bilateral ankle condition incurred in or caused by the claimed in-service injury, event or illness. After listening to the Veteran’s in-service ankle injury, the VA examiner explained that the reported in-service injury was acute, and since there is no evidence of chronicity of care, a nexus cannot be established. 

The Veteran’s record reflects a normal diagnosis of his right and left ankles. Absent any medical evidence of a disability, a grant of service connection for a right or left ankle disability is not warranted. See 38 U.S.C. § 1110; Rabideau v. Derwinski, 2 Vet. App. 141 (1992) (Congress specifically limits entitlement for service connected disease or injury to cases where such incidents have resulted in a disability). “In the absence of proof of a present disability there can be no valid claim.” See Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992).

The Board acknowledges that undiagnosed pain can be so debilitating that it can result in functional impairment. See Saunders v. Wilkie, 886 F.3d 1356 (2018) (where the evidence shows that symptoms reach the level of a functional impairment of earning capacity, a disability for VA compensation purposes exists, even if there is no underlying diagnosis). Here, the Veteran’s records reflect subjective complaints of pain. However, there is no evidence showing that the pain results in any functional loss or impairment. Id. at 1363 (2018) (holding that a “disability” under 38 U.S.C. § 1110 refers to functional impairment of earning capacity). In the April 2018 VA examination report, the examiner performed various diagnostic tests of the Veteran’s ankles and concluded that the Veteran did not exhibit any functional loss or impairment in his ankles and noted that there was no pain during the examination; therefore, the examiner advanced an impression of normal ankles. Furthermore, the examiner noted that there was no objective evidence of pain on passive range of motion testing, and no objective evidence of pain when the joint is used in non-weight bearing. 

Moreover, while the Veteran can testify that he experiences pain, the Board finds that the examiner’s assessment is more probative. The examiner considered the Veteran’s statements, performed numerous diagnostic tests, including radiological testing, and after a thorough assessment, a normal impression of the ankles was shown. As the Board cannot substitute its own medical judgment for that of medical professionals, the Board finds that the Veteran does not currently exhibit an ankle disability. Colvin v. Derwinski, 1 Vet. App. 171 (1991); see Cohen v. Brown, 10 Vet. App. 128, 140 (1997); see also Rizzo v. Shinseki, 580 F.3d 1288, 1291 (Fed. Cir. 2009) (holding that, in the absence of evidence to the contrary, medical professionals are presumed to be competent to render the diagnoses they render). 

The Board has also considered the Veteran’s contention that bilateral ankle condition had its onset in service. The Veteran is competent to testify to facts or circumstances that can be observed and described by a lay person. 38 C.F.R. § 3.159(a)(2); Kahana v. Shinseki, 24 Vet. App. 428, 438 (2011). However, lay persons without medical training, such as the Veteran, are not competent to provide medical opinions on matters requiring medical expertise. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). Specifically, the question of causation of an ankle disability involves a medical subject concerning an internal physical process extending beyond an immediately observable cause-and-effect relationship. In this regard, such an opinion requires specialized knowledge of how the human body develops ankle disability and the impact past medical symptoms could have had on such disease, if any. The Veteran is not shown to have the necessary training and expertise to provide a competent opinion as to the causes of his ankle condition. Therefore, the Board finds that the Veteran’s assertion that his in-service injuries of his ankles and his bilateral ankle condition are related has no probative value.

Instead, the Board accords great probative weight to the April 2018 VA opinion that there was no nexus between the Veteran’s bilateral ankle condition and his military service, as the opinion was predicated with a detailed review of the pertinent records, including the Veteran’s in-service medical records to the extent available, his statements and post-service VA treatment records. 

The probative value of a medical opinion is based on the medical expert’s knowledge and skill in analyzing the data and the examiner’s medical conclusion. As is true with any piece of evidence, the credibility and weight to be attached to these opinions are within the province of the adjudicator. Guerrieri v. Brown, 4 Vet. App. 467, 470-71 (1993). Whether a physician provides a basis for his or her medical opinion goes to the weight or credibility of the evidence in the adjudication of the merits. See Hernandez-Toyens v. West, 11 Vet. App. 379, 382 (1998). Other factors for assessing the probative value of a medical opinion are the physician’s access to the claims folder and the thoroughness and detail of the opinion. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008). 

Here, the medical examiner provided a clear explanation as to why the Veteran’s bilateral ankle condition was less likely than not related to his service. Moreover, the medical expert had knowledge of the relevant facts and addressed the Veteran’s contentions. The VA examiner clearly explained that the Veteran’s reported in-service injury was acute, and the Veteran’s current ankle condition was less likely than not related to the acute injury. The record does not reflect any other contrary medical opinion regarding the nexus between the Veteran’s current bilateral condition and his reported in-service injuries, and the opinion is not otherwise contradicted by the any other examination reports. 

Therefore, the Board finds that service connection is not warranted for a left or right ankle condition. In reaching this decision, the Board has considered the applicability of the benefit of the doubt doctrine. Given that no ultimate, material issues are in equipoise, that doctrine is not applicable in the instant appeal. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert, 1 Vet. App. 49. For these reasons, the claim for service connection for a left and right ankle condition is denied.

3. & 4. Entitlement to service connection for right and left knee conditions is denied.

The question for the Board is whether the Veteran has a current disability for VA compensation purposes. 

In this case, the first element of service connection has not been met. Medical evidence indicates that the Veteran does not exhibit a right or left knee disability; no diagnosis or impression of a disability was advanced by a medical examiner.

The Veteran’s medical evidence for his knees reflect the following:

The Veteran’s July 2000 enlistment examination reflects normal lower extremity and feet clinical evaluation.

In an April 2018 VA examination report, after an in-person examination and reviewing the Veteran’s records, VA examiner concluded with a diagnosis of normal left and right knees. At that time, the Veteran reported that he injured his knee in the army and was treated for knee pain, and that he currently experiences knee pain but that he was not having any functional knee loss or functional knee impairment. There was no objective evidence of pain on passive range of motion testing and no objective evidence of pain when the joint is used in non-weight bearing.

Range of motion of both knees were normal; no pain was noted during the exam. Muscle strength test showed 5/5 for both knees with flexion and extension. The examiner noted that the x-rays of the knee were normal and that there were no degenerative changes. 

The April 2018 radiological report revealed no acute bone abnormality of the right or left knee: the joint spaces were well-maintained, there was no abnormal calcification, there was no fracture or periosteal reaction, and no evidence for focal lytic or sclerotic lesion. Alignment was anatomic and there was no joint effusion or loose body. 

In April 2018, the VA examiner noted that the examination was in-person, he reviewed the record and opined that it was less likely as not that the bilateral knee condition incurred in or caused by the claimed in-service injury, event or illness. The VA examiner explained that the reported in-service injury was acute, and since there is no evidence of chronicity of care, a nexus cannot be established. 

As there is no medical evidence of a current disability, a grant of service connection for a right or left knee disability is not warranted. See 38 U.S.C. § 1110; Rabideau v. Derwinski, 2 Vet. App. 141 (1992) (Congress specifically limits entitlement for service connected disease or injury to cases where such incidents have resulted in a disability). “In the absence of proof of a present disability there can be no valid claim.” See Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992).

As above with the claim for ankles, the Board acknowledges that undiagnosed pain can be so debilitating that it can result in functional impairment, sufficient to establish a disability for compensation purposes. See Saunders v. Wilkie, supra. Here, the Veteran’s records reflect subjective complaints of pain. However, there is no evidence showing that the pain results in any functional loss or impairment. In the April 2018 VA examination report, the examiner performed various diagnostic tests of the Veteran’s knees and concluded that the Veteran did not exhibit any functional loss or impairment in his knees and noted that there was no pain during the examination; therefore, the examiner advanced an impression of normal knees. Furthermore, the examiner noted that there was no objective evidence of pain on passive range of motion testing, and no objective evidence of pain when the joint is used in non-weight bearing. Indeed, the Veteran reported he experienced no functional impairment or loss due to his knee pain. 

Moreover, while the Veteran can testify that he experiences pain, the Board finds that the examiner’s assessment is more probative. The examiner considered the Veteran’s statements, performed numerous diagnostic tests, including radiological testing, and after a thorough assessment, a normal impression of the knees was shown. As the Board cannot substitute its own medical judgment for that of medical professionals, the Board finds that the Veteran does not currently exhibit a knee disability for purposes of VA compensation. 

The Board has also considered the Veteran’s contention that bilateral knee condition had its onset in service. The Veteran is competent to testify to facts or circumstances that can be observed and described by a lay person; however, lay persons without medical training, such as the Veteran, are not competent to provide medical opinions on matters requiring medical expertise. Instead, the Board accords great probative weight to the April 2018 VA opinion that there was no nexus between the Veteran’s bilateral knee condition and his military service, as the opinion was predicated with a detailed review of the pertinent records, including the Veteran’s in-service medical records to the extent available, his statements and post-service VA treatment records. 

Therefore, the Board finds that service connection is not warranted for a left or right knee condition. In reaching this decision, the Board has considered the applicability of the benefit of the doubt doctrine. Given that no ultimate, material issues are in equipoise, that doctrine is not applicable in the instant appeal. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert, 1 Vet. App. 49. For these reasons, the claim for service connection for a left and right knee is denied.

5. Service connection for a back condition is denied.

The question for the Board is whether the Veteran has a current disability for VA compensation purposes. 

In this instance case, the first element of service connection has not been met. Medical evidence indicates that the Veteran does not exhibit a back disability; no diagnosis or impression of a disability was advanced by a medical examiner.

The Veteran’s medical evidence for his back reflect the following:

The Veteran’s July 2000 enlistment examination reflects normal spine and other musculoskeletal clinical evaluation.

In an April 2018 VA examination report, after an in-person examination and reviewing the Veteran’s records, a VA examiner concluded with a diagnosis of normal back. At that time, the Veteran reported lower and mid back pain that began in 2004, which he had injured during military training, and received treatment for his back injury. The Veteran noted that he lost his military records and that he could not see a VA examiner until 2018, and that he did go get treatment for his back from a private doctor. He reported he was taking medication but never had radiological examination for his back or any other treatment other than taking NSAIDs. He reported moderate pain about once a week. 

Range of motion of the back was normal; no pain was noted during the exam. There was no evidence of guarding or muscle spasm. Diagnosis was subjective symptoms, no significant history of the back, no continuity of care and normal examination and normal x-rays. 

The April 2018 radiological report revealed a lower back impression of no compression fracture or acute abnormality: vertebral body alignment was within normal limits, no acute fracture was evident and disc spaces were well-maintained. The upper back radiological impression was no acute fracture or subluxation; vertebral bodies were normal in appearance with good visualization of pedicles and spinous processes, the intervertebral disc spaces were well maintained and there was no compression fracture or spondylolisthesis identified and soft tissue structure was unremarkable.

In April 2018, the VA examiner noted that the examination was in-person, he reviewed the record and opined that it was less likely as not that the back condition incurred in or caused by the claimed in-service injury, event or illness. The VA examiner explained that the reported in-service injury was acute, and since there is no evidence of chronicity of care, a nexus cannot be established. 

As there was no medical evidence of a disability, a grant of service connection for a back disability is not warranted. Again, while the Veteran’s records reflect subjective complaints of pain, there is no probative evidence showing that the pain results in any functional loss or impairment. In the April 2018 VA examination report, the examiner performed various diagnostic tests of the Veteran’s back and concluded that the Veteran did not exhibit any functional loss or impairment in his back and noted that there was no pain during the examination; therefore, the examiner advanced an impression of a normal back. Furthermore, the examiner noted that there was no objective evidence of pain when the spine is in a non-weight bearing position at rest. Indeed, the Veteran stated that he attends law school full-time, and while his pain prevented him from working for one or two weeks out of the 12 months as a student, the Veteran did not report that he could not stand, walk, lift or sit as a result of the pain. 

Moreover, while the Veteran can testify that he experiences pain, the Board finds that the examiner’s assessment is more probative. The examiner listened to the Veteran’s complaints, performed numerous diagnostic tests, including radiological testing, and after a thorough assessment, a normal impression of the back was advanced. As the Board cannot substitute its own medical judgement for that of medical professionals, the Board finds that, absent any contrary medical evidence, the Veteran does not currently exhibit a back disability. 

Finally, as above, the Veteran is not competent to diagnose himself with a back disability as such requires medical expertise. Therefore, the Board finds that the Veteran’s assertion that he has a current back disability related to in-service injuries of his back condition has no probative value. Instead, the Board accords great probative weight to the April 2018 VA opinion that there was no nexus between the Veteran’s back condition and his military service, as the opinion was predicated with a detailed review of the pertinent records, including the Veteran’s in-service medical records to the extent available, his statements and post-service VA treatment records. 

The Board also notes that the Veteran reported that he had been treated by a private doctor for his back. However, in this case, the Board finds that VA has no duty to assist. Indeed, in August 2017, the RO sent a letter to the Veteran specifically requesting information and authorization to retrieve the private records. The Veteran never provided any information, and throughout this appeal, he has not argued that the VA did not assist with obtaining those records. VA’s duty to assist is not always a one-way street. If a veteran wishes help, he cannot passively wait for it in those circumstances where he may or should have information that is essential in obtaining the putative evidence. See Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). Moreover, it is the Veteran’s responsibility to present and support a claim for benefits. See 38 U.S.C. § 5107 (a); Fagan v. Shinseki, 573 F.3d 1282, 1287 (Fed. Cir. 2009). 

Therefore, the Board finds that service connection is not warranted for a back condition. In reaching this decision, the Board has considered the applicability of the benefit of the doubt doctrine. Given that no ultimate, material issues are in equipoise, that doctrine is not applicable in the instant appeal. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert, 1 Vet. App. 49. For these reasons, the claim for service connection for a back condition is denied.

6. Service connection for residuals of TBI is denied.

The Veteran contends that has residuals of traumatic brain injury. 

The first question is whether the Veteran exhibits a current disability for VA compensation purposes.

In this case, the first element of evidence of service connection of a current disability has not been met. Medical evidence does not reveal an objective finding of any current residuals from a TBI. During the April 2018 VA examination, the Veteran reported that he hit his head hard after a parachute jump but denied loss of consciousness after the hit. He also reported that he hit his head during basic training, was hit by the end of a gun and went to the infirmary. He was also near an explosion, which was loud but did not knock him down.

The VA examiner assessed the following regarding the Veteran’s cognitive ability: no complaints of impairment of memory, attention, concentration or executive functions; normal judgment; appropriate social interaction, always oriented to person, time, place and situation, normal motor activity, normal motor activity, normal visual spatial orientation, no subjective symptoms, no neurobehavioral effects; has the ability to communicate by spoken and written language and to comprehend spoken and written language; and normal consciousness. The VA examiner noted that there was no need for a follow up and after listening to the Veteran’s medical history, the examiner diagnosed the Veteran with acute traumatic brain injury that was now resolved. In fact, the Veteran did not have any current complaints or reported symptoms regarding any residuals of TBI. 

Service connection may only be granted for a veteran if the evidence demonstrates that the Veteran exhibits a current disability. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303 (a). In this instant case, medical evidence indicates that the Veteran does not exhibit any residuals from hitting his head during service; no current diagnosis or impression of a disability was advanced by a medical examiner. In fact, the examiner assessed that any head injury he had during service was now resolved. Therefore, absent any medical evidence of a disability, a grant of service connection for residuals of TBI is not warranted. See 38 U.S.C. § 1110; Rabideau v. Derwinski, 2 Vet. App. 141 (1992) (Congress specifically limits entitlement for service connected disease or injury to cases where such incidents have resulted in a disability). “In the absence of proof of a present disability there can be no valid claim.” See Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992).

Accordingly, the Board finds that the preponderance of evidence is against a finding that there is a current disability of a TBI for which service connection could be granted. Therefore, the claim for service connection for residuals of TBI must be denied. 38 U.S.C. §5107 (2012); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). In reaching this decision, the Board has considered the applicability of the benefit of the doubt doctrine. Given that no ultimate, material issues are in equipoise, that doctrine is not applicable in the instant appeal. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert, 1 Vet. App. 49. 

7. Service connection for bilateral hearing loss is denied.

The Veteran asserts that he has a bilateral hearing loss disability as a result of in-service noise exposure.

The Veteran was afforded a VA audiological examination in September 2017. On that date, pure tone thresholds, in decibels, were as follows: 

Hertz 500 1000 2000 3000 4000

Right 15 15 20 10 10

Left 15 10 10 25 25

Speech audiometry revealed speech recognition ability of 100 percent in the right ear and in the left ears. 

These results do not meet the definition of hearing impairment, as defined by VA regulations. 38 C.F.R. § 3.385.

Based on the foregoing, the Board finds that the Veteran does not have bilateral hearing loss as contemplated by 38 C.F.R. § 3.385. See 38 C.F.R. §§ 3.307 (a)(3), 3.309(a). VA audiometric testing did not reflect auditory thresholds of 40 decibels or greater, or auditory thresholds for at least three of the relevant frequencies of 26 decibels or greater, or Maryland CNC speech recognition scores of less than 94 percent. See 38 C.F.R. § 3.385. 

In reaching this determination, the Board does not question the sincerity of the Veteran’s reports of difficulty hearing and acknowledges that, as a lay person, he is competent to report that he has difficulty hearing. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). Unfortunately, as a layperson, the Veteran does not have the requisite expertise to provide a competent opinion as to whether he has a current hearing loss disability in accordance with VA standards, as such matters require medical expertise and testing. 38 C.F.R. § 3.159 (a)(1) (competent medical evidence means evidence provided by a person who is qualified through education, training or experience to offer medical diagnoses, statements, or opinions). Specifically, the results of an audiogram administered by a state-licensed audiologist is the only type of evidence deemed competent to show a hearing impairment for VA purposes. Here, the audiogram results show no such impairment. 

In sum, absent any current diagnosis of a hearing loss disability in accordance with VA standards, an award of service connection for bilateral hearing loss is not warranted. See Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). In reaching this conclusion, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the finding for bilateral hearing loss in accordance to VA law, and therefore, that doctrine is not applicable in the instant appeal. See 38 U.S.C. § 5107 (b); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49, 55-57 (1990).

8. Entitlement to an initial disability rating higher than 50 percent for PTSD is denied.

Service connection was established for PTSD by a May 2018 rating decision and confirmed in the November 2018 Higher Level Review rating decision. An initial evaluation of 50 percent was established, under 38 C.F.R. § 4.130, DC 9411. The Veteran contends that he is entitled to a higher rating for his service-connected PTSD disorder.

Disability evaluations (ratings) are determined by evaluating the extent to which a Veteran’s service-connected disability adversely affects his ability to function under the ordinary conditions of daily life, including employment, by comparing the symptomatology with the criteria set forth in the Schedule for Rating Disabilities (Rating Schedule). 38 U.S.C. § 1155 (2012); 38 C.F.R. §§ 4.1, 4.2, 4.10 (2018). 

The Veteran’s PTSD disability rating has been found to be at 50 percent. These ratings are set using DC 9411, which refers to the General Rating Formula for Mental Disorders. 38 C.F.R. § 4.130. 

Under that code, a 50 percent rating is warranted when there is occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g. retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships.

A 70 percent is warranted when there is occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); and inability to establish and maintain effective relationships. 

A 100 percent evaluation is assignable where there is total occupational and social impairment, due to such symptoms as gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); and disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id.

The “such symptoms as” language of the diagnostic codes for mental disorders in 38 C.F.R. § 4.130 means “for example” and does not represent an exhaustive list of symptoms that must be found before granting the rating of that category. See Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). However, as the Court also pointed out in that case, “without those examples, differentiating a 30% evaluation from a 50% evaluation would be extremely ambiguous.” Id. The Court went on to state that the list of examples “provides guidance as to the severity of symptoms contemplated for each rating.” Id. Accordingly, while each of the examples need not be proven in any one case, the particular symptoms must be analyzed in light of those given examples. Put another way, the severity represented by those examples may not be ignored. 

Consideration is also given to the frequency, severity, and duration of psychiatric symptoms, the length of remission, and the Veteran’s capacity for adjustment during periods of remission. The rating agency shall assign an evaluation based on all the evidence of record that bears on occupational and social impairment, rather than solely on the examiner’s assessment of the level of disability at the moment of the examination. See 38 C.F.R. § 4.126 (a). Furthermore, when evaluating the level of disability arising from a mental disorder, the rating agency will consider the extent of social impairment, but shall not assign an evaluation solely on the basis of social impairment. 38 C.F.R. § 4.126 (b). 

In September 2017, the Veteran was afforded a VA examination. Diagnosis was PTSD, alcohol use disorder and cannabis use disorder. After examining the Veteran, the examiner concluded that the Veteran exhibited occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care and conversation.

The Veteran reported that he was close to his five siblings and that he tries to stay in touch with them and to get together for the holidays. He also reported that he has a stable relationship with his parents, has acquaintances he knows from work and keeps in contact with ex-Army friends. He also reported that he has no time for hobbies due to school work. The Veteran reported that he had problems working with people after separation from service, he worked at a bank for 8 years, he completed a bachelor’s degree but had problems with attention, concentration during his college studies. He also reported that he feels like he will get shot through the head and uses cannabis to reduce his stress. He reported that he has had more difficulty in connecting to people and has had loss of pleasure in daily activities, and has had thoughts of suicide. 

Symptoms included depressed mood, anxiety, panic attacks that occur weekly or less often, chronic sleep impairment, mild memory loss, such as forgetting names, directions or recent events, and difficulty in establishing and maintaining effective work and social relationships. The examiner noted that the Veteran was dressed appropriately and had normal hygiene and grooming limits, was cooperative and appropriately respectful. On mental status examination, the Veteran was alert, oriented to person, place, time and situation; his mood was euthymic; affect congruent with mood; speech was coherent; thought content revealed no unusual thought processes, delusional qualities or flight of ideas; attention and concentration were within normal limits. The Veteran demonstrated normal word fluency, ability to comprehend information spoken and received; demonstrated no evidence of impairments with immediate or remote memory; judgement and insight appeared intact; and denied suicidal and homicidal ideation.

An April 2018 VA record reflects that the Veteran’s occupation was a full-time law student.

Based on the record, the Board finds that the disability picture did not approximate a disability rating higher than 50 percent. Collectively, the Veteran’s PTSD symptoms are not of the type, extent, severity and/or frequency that result in a 70 percent disability rating: occupational and social impairment deficiencies in most areas, such as work, school, family relations, judgement, thinking or mood due to such symptoms: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); and inability to establish and maintain effective relationships. 

For example, there is evidence that the Veteran is able to establish and maintain effective relationships: he has relationships with his five siblings and gets together with them during the holidays, he keeps in touch with his ex-Army friends and had acquaintances when he was working. While the Veteran is not currently employed, he is studying as a full-time law student, which would show he is not impaired in judgment or thinking. Furthermore, on examination, the examiner noted that the Veteran had good hygiene and grooming, was alert, judgment was intact, comprehended information spoken and received and mood was euthymic. While the Veteran has panic attacks, the examiner noted that it was once a week or less, which may make him less reliable and productive but not deficient as contemplated within the 70 percent disability rating. For example, he reported that he had problems with attention, concentration and will sometimes get off track but was able to complete his college courses and graduate with a bachelor’s degree and work at a bank for 8 years. As such, the Veteran’s symptoms do not reflect that he has deficiencies in most areas of his social and work life. 

The Veteran and his attorney argue that he should be awarded with a 70 percent disability rating because the Veteran reported that he had suicidal ideations in the past. However, at the VA examination, the Veteran denied any suicidal ideations. In this case, the evidence does not demonstrate the frequency, type and extent of such symptom that is contemplated in the higher disability rating. The Veteran clearly does not exhibit an inability to function independently, appropriately and effectively, as contemplated by the criteria for a 70 percent disability rating.

The Board’s finding that the Veteran’s disability does not meet the criteria for a 70 percent rating entails a finding that he does not meet the criteria for a 100 percent rating. The maximum schedular rating of 100 percent is not warranted in this case because, as discussed above, there is not total occupational and social impairment due to such symptoms as gross impairment in thought processes or communication; persistent delusions; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of closes relatives, own occupation, or own name; or other symptoms on par with the level of severity contemplated by those symptoms.

The Board emphasizes that, in analyzing this claim, the symptoms identified in the Rating Formula have been considered not as an exhaustive list of symptoms, but as examples of the type and degree of the symptoms, or effects, that would justify a particular rating. The Board has not required the presence of a specified quantity of symptoms in the rating schedule to warrant a higher rating. 

Taking all the evidence together – the Veteran’s statements, the examiner’s conclusion after examining the Veteran and the Veteran’s PTSD symptoms and how they impact his social and occupational functioning – the Board finds that a disability rating higher than 50 percent for PTSD is not warranted. 

9. Earlier effective date for service connection for PTSD is denied.

In the legal brief, the Veteran and his attorney asserted that VA should assign an earlier effective date for his claim for service connection for PTSD. In a May 2018 rating decision, the Veteran was granted service connection for PTSD with a disability rating of 50 percent and an effective date of March 25, 2017, the day when the RO received the claim. 

Generally, a specific claim in the form prescribed by VA must be filed in order for benefits to be paid to any individual under the laws administered by VA. 38 C.F.R. §3.151(a).

VA law specifies that the effective date for an award of compensation based on an original claim will be the date of receipt of the claim or the date entitlement arose, whichever is later. 38 U.S.C. § 5110; 38 C.F.R. § 3.400. Effective March 24, 2015, Section 506 of PL 112-154, now codified as 38 U.S.C. § 5110 (b)(2)(A), establishes different rules for the assignment of effective dates that are specific to claims decided under the fully developed claim process. Thereunder, the effective date of an award of disability compensation to a veteran who submits an application therefor that sets forth an original claim that is fully-developed as of the date of submittal shall be fixed in accordance with the facts found, but shall not be earlier than the date that is one year before the date of receipt of the application. 38 U.S.C. § 5110 (b)(2)(A).

In this case, the Veteran was notified that in August 2017, that his claim would be processed under VA’s standard claims-processing procedures, and that his claim could not be processed under the Fully Developed Claim (FDC) Program because he submitted additional claims after receipt of the FDC claim. Therefore, in this case, the effective date will be based on the date when the original claim was received or when the entitlement arose, whichever is later.

The Veteran and his attorney argue that the effective date should be either (1) the day after he separated from service or (2) the date when he submitted a claim for PTSD in June 2011. Due to complications during the Veteran’s separation, the Veteran received his DD214 in June 2017. 

Based on VA law, if a claim is received within 1 year after separation from service, the effective date can be assigned to the day following separation from active service or date entitlement arose. Otherwise, if a claim is not received within 1 year after separation from service, the date is the receipt date of the claim or when entitlement arose, whichever is later. §3.400(b)(ii)(B)(2).

However, VA law specifies that the effective date for an award of compensation based on an original claim will be the date of receipt of the claim or the date entitlement arose, whichever is later. 38 U.S.C. § 5110; 38 C.F.R. § 3.400. There is no evidence, nor does the Veteran or his attorney contend, that the Veteran filed a claim within one year after separation from service. Therefore, an effective date cannot be assigned to the day following separation from active service.

VA law also specifies that if at any time after VA issues a decision on a claim and thereafter VA receives or associates with the claims file relevant official service department records that existed and had not been associated with the claims file when VA first decided the claim, VA will reconsider the claim. 38 C.F.R. § 3.156(c)(1). The reconsideration of a claim, however, does not apply to records that VA could not have obtained when it decided the claim because the records did not exist at the time of the decision or because the claimant failed to provide sufficient information for VA to identify and obtain the service department records from an official source. 38 C.F.R. § 3.156 (c)(2).

The record reflects that the Veteran submitted a claim for service connection for PTSD in June 2011. In April 2012, the RO mailed a letter to the Veteran informing him that VA must deny the claim because a DD-214 was not received. The letter explained that if the VA does not get the evidence by September 2012, information received after that date will be considered a new claim. There was no determination on the merits of the Veteran’s PTSD claim. Notably, the Veteran did not respond to the RO Letter. Therefore, the April 2012 decision became final. 38 U.S.C. § 7105 (c); 38 C.F.R. § 20.1103.

The Veteran now contends that his effective date should go back to June 2011, the period when he first filed the PTSD claim.

In this case, however, based on VA law, the effective date cannot go back to the date when the Veteran filed his claim for service connection for PTSD because his DD-214 was a document that the RO could not have obtained when it denied the claim because it did not exist at the time of the decision. While the Board is sympathetic to the Veteran in that he could not obtain a DD-214 until June 2017, there is no dispute that the DD-214 was not previously created or issued at the time the RO attempted to process the Veteran’s June 2011 claim. See May 2018 Appellant’s Legal Brief. 

Moreover, VA law specifies that the effective date for an award of compensation based on an original claim will be the date of receipt of the claim or the date entitlement arose, whichever is later. 38 U.S.C. § 5110; 38 C.F.R. § 3.400. In this case, the record reflects that the Veteran was diagnosed with PTSD in May 2017. There is no medical evidence that the Veteran was diagnosed with PTSD prior to March 25, 2017. Indeed, the June 2011 decision to deny the claim did not address the merits of the Veteran’s PTSD, but denied the claim based on the absence of a DD-214, at which time did not exist. Even if the VA were able to reconsider the claim submitted in June 2011, the effective date would be the date when entitlement arose based on the record. 

As an exception to the general effective date rule does not apply to the Veteran, the Board finds that an effective date earlier than March 25, 2017, the date when the RO received the new claim for PTSD, is proper.

10. Earlier effective date of March 25, 20187, for grant of service connection for tinnitus with an evaluation of 10 percent is denied. 

Generally, a specific claim in the form prescribed by VA must be filed in order for benefits to be paid to any individual under the laws administered by VA. 38 C.F.R. §3.151(a).

VA law specifies that the effective date for an award of compensation based on an original claim will be the date of receipt of the claim or the date entitlement arose, whichever is later. 38 U.S.C. § 5110; 38 C.F.R. § 3.400. Effective March 24, 2015, Section 506 of PL 112-154, now codified as 38 U.S.C. § 5110 (b)(2)(A), establishes different rules for the assignment of effective dates that are specific to claims decided under the fully developed claim process. Thereunder, the effective date of an award of disability compensation to a veteran who submits an application therefor that sets forth an original claim that is fully-developed as of the date of submittal shall be fixed in accordance with the facts found, but shall not be earlier than the date that is one year before the date of receipt of the application. 38 U.S.C. § 5110 (b)(2)(A).

In this case, the Veteran’s claim for service connection for tinnitus was received on June 18, 2017. The RO sent a letter to the Veteran in August 2017 informing the Veteran that his claim will not be eligible under the Fully Developed Claim Program and will be processed under the standard claims-processing procedure. Because the RO considered the Veteran’s filing in March 25, 2017, as an intent to file claim, the RO found the effective date for service connection for tinnitus to be on March 25, 2017. See § 3.155(a) (VA will consider the complete claim filed as of the date the intent to file a claim was received).

Other than simply stating that the Veteran and his attorney disagreed with the effective date for service connection for tinnitus, they have not contended any reasons as to why the assignment of the effective date for tinnitus improper.

The record clearly reflects that the Veteran filed an intent to claim on March 25, 2017, then filed a supplemental claim on June 18, 2017, and service connection was granted in a November 2018 rating decision with an effective date of March 25, 2017. The record reflects that was the first time as to when the Veteran filed the claim for service connection for tinnitus. As there is no dispute as to when the filings occurred and an exception for an earlier effective date is not found under VA law, the Board finds that the effective date for service connection for tinnitus was proper. 

 

BETHANY L. BUCK

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD C. Lee, Associate Counsel