﻿Citation Nr: AXXXXXXXX
Decision Date: 05/07/19 Archive Date: 05/06/19

DOCKET NO. 181107-1333
DATE: May 7, 2019

ORDER

Entitlement to an initial rating in excess of 30 percent from October 1, 2010 to January 21, 2013, for generalized anxiety disorder is denied. 

Entitlement to a disability rating of 50 percent, but no higher, from January 22, 2013 to February 7, 2019, for generalized anxiety disorder is granted.

Entitlement to service connection for posttraumatic stress disorder (PTSD) is denied. 

Entitlement to service connection for hypertension (claimed as high blood pressure) is denied. 

REMANDED ISSUES

Entitlement to service connection for diabetes mellitus type II, to include as due to herbicide agent exposure, is remanded.

Entitlement to service connection for chronic kidney disease (claimed as kidney failure and kidney condition) as secondary to diabetes mellitus type II is remanded.

FINDINGS OF FACT

1. From October 1, 2010 to January 21, 2013, the Veteran’s generalized anxiety disorder was manifested by occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks.

2. From January 22, 2013 to February 7, 2019, the Veteran’s generalized anxiety disorder was manifested by occupational and social impairment with reduced reliability and productivity. 

3. The Veteran does not have PTSD. 

4. Hypertension was not present during the Veteran’s active service, was not manifest to a compensable degree within one year of separation from active service; and the record contains no indication that the Veteran’s current hypertension is causally related to his active service or any in-service disease or injury.

CONCLUSIONS OF LAW

1. The criteria for an initial disability rating in excess of 30 percent from October 1, 2010 to January 21, 2013, for generalized anxiety disorder have not been met. 38 U.S.C. § 1155, 5107 (2012); 38 C.F.R. §§ 4.3, 4.7, 4.130, Diagnostic Code 9440 (2018). 

2. The criteria for a disability rating in excess of 30 percent from January 22, 2013 to February 7, 2019, for generalized anxiety disorder have been met. 38 U.S.C. § 1155, 5107 (2012); 38 C.F.R. §§ 4.3, 4.7, 4.130, Diagnostic Code 9440 (2018).

3. The criteria for service connection for PTSD have not been met. 38 U.S.C. §§ 1110, 1131 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.304 (2018).

4. The criteria for entitlement to service connection for hypertension have not been met. 38 U.S.C. §§ 1110, 1131, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2018).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The rating decision on appeal was issued in August 2018. In May 2018, the Veteran elected the modernized review system. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 19.2(d)).

While the Veteran requested a hearing before a Veterans Law Judge in his October 2015 substantive appeal, his May 2018 election to participate in Rapid Appeals Modernization Program effectively withdrew his appeal under the current appeals process. Additionally, the Veteran’s representative, in a correspondence received in January 2019, indicated that the Veteran waived his right to a hearing before the Board for all pending appeals. Thus, his hearing request is deemed withdrawn. 

The Veteran served on active duty from December 1968 to December 1972. The Veteran selected the Higher-Level Review lane when he opted in to the Appeals Modernization Act (AMA) review system by submitting a Rapid Appeals Modernization Program (RAMP) election form. Accordingly, the August 2018 AMA rating decision considered the evidence of record as of the date VA received the RAMP election form. The Veteran timely appealed this rating decision to the Board and requested the evidence submission review lane, allowing him 90 days to submit evidence pertinent to his claim. 

This appeal has been advanced on the Board’s docket pursuant to 38 U.S.C. § 7107(a)(2); 38 C.F.R. § 20.900(c).

1. Entitlement to an initial rating in excess of 30 percent from October 1, 2010 to February 7, 2019, for generalized anxiety disorder.

The Veteran contends that he is entitled to a rating in excess of 30 percent for his general anxiety disorder.

The AOJ found that the Veteran’s generalized anxiety disorder resulted in occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal) and assigned a 30 percent rating under Diagnostic Code (DC) 9400.

A 30 percent evaluation is warranted when a mental disability results in occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactory, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, and mild memory loss (such as forgetting names, directions, recent events). 38 C.F.R. § 4.130.

A 50 percent evaluation is warranted if the evidence establishes there is occupational and social impairment, with reduced reliability and productivity due to such symptoms as flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing and maintaining effective work or social relationships. Id.

Private treatment records dated from November 2008 to July 2012 indicate that the Veteran had depression, was on medication, and was doing well without any significant affective symptoms.

The Veteran underwent a PTSD VA examination in January 2013, which noted diagnoses of generalized anxiety disorder, depressive disorder, and alcohol dependence with physiological dependence in sustained full remission. The Veteran reported that he did not have close friends or voluntarily attend social functions, though he indicated that he had a good relationship with his wife and sometimes accompanied her to church events. The Veteran denied current feelings of depressed mood for more days than not over a two-week period, and he endorsed passive suicidal ideation with no intent to carry through. The examiner noted that the Veteran had symptoms of depressed mood; anxiety; suspiciousness; chronic sleep impairment; and the inability to establish and maintain effective relationships. The examiner opined that the Veteran had occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or; symptoms controlled by medication.

Subsequent medical treatment records reflect that the Veteran received a PTSD screening in January 2014, which indicated that, based on self-reporting, the Veteran met the criteria for PTSD. Referral was made for the Veteran to receive PTSD group therapy. During this period, the Veteran endorsed symptoms of depression, anxiety, irritability, fatigue, withdrawal, agitation, worry, hyperactivity and easy startle. His appearance was noted as within normal limits and he was oriented; additionally, it was noted that his behavior was cooperative, speech was normal, cognition was within normal limits, and judgment was good. 

A February 2014 treatment record indicated that the Veteran reported depressed mood, decreased interest in pleasurable activities, difficulty in falling asleep, difficulty in staying asleep, feelings of worthlessness, fatigue or loss of energy, indecisiveness, diminished ability to concentrate, poor appetite, recurrent thoughts of death, irritability, feelings of hopelessness and helplessness, and isolation and social withdrawal. A clinical social worker provided differential diagnoses of PTSD and depression. 

A May 2014 treatment record reflects that the Veteran received a diagnosis of PTSD and depression. No associated assessment is provided. Subsequently, an assessment conducted in October 2014, indicated that based on the Veteran’s self-reporting, PTSD was suggested. 

At a July 2015 VA examination, the examiner provided a diagnosis of other specified trauma- and stressor-related disorder. The examination notes that the Veteran was referred to a psychiatrist in 2014 for treatment, who referred him to an outpatient PTSD program. The examiner noted that the Veteran was prescribed medication and attended 30 to 35 PTSD-related group therapy sessions until health issues forced him to terminate his care. The examination indicates that the Veteran had symptoms of depressed mood, anxiety, chronic sleep impairment, and mild memory loss. After a review of the Veteran’s claims file and an in-person assessment, the examiner opined that the Veteran had occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during period of significant stress, or; symptoms controlled by medication. The examiner indicated that the Veteran had “sub-threshold PTSD” symptoms that warrant a current DSM-5 diagnosis of Other Specified Trauma- and Stressor-Related Disorder. 

In his VA Form 9, the Veteran reported that he attended PTSD group therapy sessions from March 2014 until November 2014, when he became hospitalized for kidney failure. He noted that he resumed his sessions in October 2015. The Veteran further indicates that he experienced symptoms of anger, distrust, depression, and anxiety. 

An October 2015 medical treatment record, authored by a social worker, reflects that the Veteran reported feeling depressed, agitated and angry, a lack of interest in things he used to enjoy, a lack of energy, intrusive thoughts, nightmares, sleeping difficulty, worry that his kidneys may stop working and that he might die, nervous or anxious, avoidance of thoughts related to combat, hyper startle response, and hypervigilance. The note indicates that the Veteran was casually dressed and is hygiene was “okay.” He was cooperative and pleasant, anxious or depressed; his speech was within normal limits; thought process was logical and goal directed; insight and judgement were fair. The Veteran denied suicidal or homicidal ideation. The social worker noted diagnoses of PTSD and major depressive disorder. 

A February 2016 treatment record, signed by a clinical pharmacy specialist, indicates a diagnosis of PTSD and anxiety disorder. The Veteran reported he was sleeping better, worked in the garage on projects, and his energy level and mood were up. He noted that he snapped at his wife a couple of times. He denied suicidal and homicidal ideation. His appearance was noted as neat and clean; attitude was cooperative; speech was normal; mood was depressed; perception was within normal limits; affect was congruent with mood; thought process was linear and logical; insight and judgment were good; and cognition was grossly intact. 

The Veteran’s treating physician provided a statement, received by VA in January 2017, which opined that the Veteran had occupational and social impairment with deficiencies in most areas. This statement was accompanied by select treatment records indicating that the Veteran was receiving treatment for PTSD. Notably, one of these records was the January 2014 assessment, noted above, indicating that a PTSD diagnosis was suggested. 

In December 2017, the Veteran sought to transfer his care to a new facility and underwent an initial screening. The Veteran’s file was reviewed, and an interview was conducted. The Veteran reported symptoms of flashbacks three to four times per month, nightmares, intrusive thoughts, easily startle, hypervigilance. The Veteran indicated that he had a history of experiencing one panic attack around January 2015 and difficulty with crowds. The Veteran indicated that he sometimes raised his voice and cursed but was not aggressive. He also noted forgetfulness, short term memory problems, and sleep problems. Based on the assessment, the physician provided a provisional diagnosis of PTSD and unspecified depressive disorder. 

Subsequent medical treatment records reflect that the Veteran received ongoing PTSD group therapy, which indicate, based on chart review, that the Veteran had diagnoses of PTSD and general anxiety disorder. 

For the period from October 1, 2010 to January 21, 2013, the Board finds that the Veteran’s symptoms do not warrant a rating in excess of 30 percent. The records during this period indicate that the Veteran suffered from depression, was on medication, and did not have any significant affective symptoms. See 38 C.F.R. § 4.130, DC 9400. There is no indication in the record that the Veteran experienced any symptoms or occupational or social impairment which would warrant a higher rating during this period. 

For the period from January 22, 2013, the Board finds that the Veteran’s symptoms more closely approximate a 50 percent disability rating. Specifically, due to the Veteran’s symptoms of depressed mood, anxiety, chronic sleep impairment, mild memory loss, irritability, hyper startle response, difficulty concentrating, and social withdrawal, the Board finds that the Veteran’s general anxiety disorder was manifested by occupational and social impairment with reduced reliability and productivity. See id. 

A higher rating is not available for this period because the Veteran’s disability picture does not more closely approximate occupational and social impairment with deficiencies in most areas. There is no indication in the record that the Veteran had experienced symptoms of obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately, and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); inability to establish and maintain effective relationships. Id. During this period, the records consistently indicate that the Veteran was oriented, adequately groomed, and his speech was within normal limits. 

The Board acknowledges that the January 2013 VA examiner noted that the Veteran was unable to establish or maintain effective relationships, and the Veteran reported difficulty with crowds and social isolation; however, the records reflect that the Veteran had a good relationship with his wife and attended church functions. Additionally, the Board has considered the Veteran’s statement that he experienced anger and sometimes snaps at his wife; however, the record reflects that the Veteran has never been aggressive or otherwise had impaired impulse control. Moreover, the Board notes that the Veteran reported that he experienced intermittent suicidal ideation. However, the record consistently notes that the Veteran denied any intent, plan, or past suicide attempts. Accordingly, the Board does not find that these symptoms, even taken together, rise to the level severity, frequency, and duration warranting a 70 percent disability rating. See 38 C.F.R. § 4.126(a); Vazquez-Claudio v. Shinseki, 713 F.3d 112, 116-17 (Fed. Cir. 2013).

Furthermore, the Board has considered the statement provided by the Veteran’s treating physician; however, it is unclear which symptoms the physician attributed to this level of occupational and social impairment because the statement was merely added to the bottom of treatment records from years prior. Regardless, the symptoms noted in these records indicate that the Veteran was oriented, his speech was normal, his judgement was good, and his appearance was within normal limits. Additionally, the note indicates that the Veteran indicated that over the last 30 days he was depressed, anxious, irritable, restless, fatigued, withdrawn, worried, hyperactive, jumpy, argumentative, preoccupied, distractible, unmotivated, self-critical, and pessimistic. The Board finds that these symptoms are adequately contemplated under the 50 percent disability rating now assigned to the period from January 22, 2013. See 38 C.F.R. § 4.130, DC 9400.

Service Connection

Establishing service connection generally requires (1) evidence of a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship, i.e., a nexus, between the claimed in-service disease or injury and the current disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). 

Service connection may also be granted for any disease diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d) (2018). Continuity of symptomatology may also provide a basis for a grant of service connection for diseases defined as “chronic” by VA, which includes hearing loss and tinnitus. 38 C.F.R. § 3.303 (b), 3.307(a)(3), 3.309(a); Fountain v. McDonald, 27 Vet. App. 258 (2015). 

The Board must assess the credibility and weight of all evidence, including the medical evidence, to determine its probative value, accounting for evidence, which it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the appellant. Equal weight is not accorded to each piece of evidence contained in the record; not every item of evidence has the same probative value. When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the appellant prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

2. Service connection for PTSD is denied.

The Veteran contends that he is entitled to service connection for PTSD, in addition to his already-service connected general anxiety disorder, as he believes that he has PTSD due to his traumatic experiences during service.

Service connection for PTSD specifically requires: (1) a medical diagnosis of PTSD utilizing the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders criteria, in accordance with 38 C.F.R. § 4.125(a); (2) credible supporting evidence that the claimed in-service stressor actually occurred; and (3) medical evidence of a causal nexus between current symptomatology and the specific claimed in-service stressor. See 38 C.F.R. § 3.304(f); Cohen v. Brown, 10 Vet. App. 128, 138 (1997).

STRs, including entrance and separation examinations, are silent for any complaints, treatment or diagnosis related to a psychiatric disorder.

Based on the evidence of record, as detailed above, the Board finds that the Veteran does not have a confirmed diagnosis of PTSD. Although his medical treatment records provide numerous PTSD references, including PTSD group therapy treatment, a careful review of the record indicates that a PTSD diagnosis was, at most, noted as suggested, provisional, or differential following assessments by his treating physicians. The Board finds this evidence outweighs the PTSD notations made by any social workers or clinical pharmacy specialists. Additionally, the diagnoses provided in the Veteran’s group therapy records consistently indicate that an assessment was not conducted, but rather, the diagnosis was provided merely based on the Veteran’s chart. 

The Board has considered the private opinion from the Veteran’s treating physician; however, the statement provided merely indicates that the Veteran was receiving PTSD treatment, not that he had a current diagnosis of PTSD. Indeed, the records that the physician provided only indicated that the Veteran had a suggested diagnosis of PTSD. 

The existence of a current disability is the cornerstone of a claim for VA disability compensation. See Degmetich v. Brown, 104 F. 3d 1328 (1997); see also Gilpin v. West, 155 F.3d 1353 (Fed. Cir. 1998); Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992); Rabideau v. Derwinski, 2 Vet. App. 141, 144 (1992); Romanowsky v. Shinseki, 26 Vet. App. 289 (2013). The Board emphasizes that Congress has specifically limited entitlement to service connection for disease or injury to cases where such incidents have resulted in disability. See 38 U.S.C. § 1101. Thus, evidence of a current disability is a fundamental requirement for a grant of service connection. See McClain v. Nicholson, 21 Vet. App. 319, 321 (2007).

The Veteran is competent to report his symptoms; however, to the extent that such assertions purport to establish a current disability or the etiology of any such disability, such assertions do not provide persuasive support for the claim, as the Veteran is not shown to possess the medical training to render competent opinions about such complex medical matters. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F. 3d 1331 (Fed. Cir. 2006). This is particularly true with respect to mental disorders, which are not directly observable, and which tend to alter the claimant’s perceptions. Even if the Veteran were competent to diagnose PTSD, the probative value of his opinion is outweighed by that of the VA examiners, who clearly do have the education, experience and training to diagnose psychiatric disorders. Those examiners found that the Veteran did not have PTSD.

As such, the Board concludes that the Veteran has not had PTSD at any time during the pendency of the claim. 38 U.S.C. §§ 1110, 1131, 5107(b); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); Romanowsky v. Shinseki, 26 Vet. App. 289, 294 (2013); McClain, 21 Vet. App. at 321; 38 C.F.R. § 3.303(a), (d). In the absence of a current disability that accounts for the Veteran’s claimed PTSD symptoms, further analysis is not necessary. See Brammer, 3 Vet. App. at 225. 

The Board notes, however, that the Veteran’s claimed PTSD symptoms have been considered and are reflected in the Veteran’s disability ratings for generalized anxiety disorder. Accordingly, these reports of symptoms do not provide a basis to grant service connection for another psychiatric disorder. See 38 C.F.R. § 4.14.

Thus, the Board finds that the preponderance of the evidence is against the claim for a service connection for PTSD. Accordingly, the benefit-of-the-doubt rule does not apply, and the claim is denied. See 38 U.S.C. § 5107(b); 38 C.F.R. §§ 3.102; 4.3; Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990).

3. Service connection for hypertension (claimed as high blood pressure) is denied.

The Veteran claims that he is entitled to service connection for hypertension, to include as due to exposure to herbicide agents during his service in Vietnam. Specifically, the Veteran indicated that while the ships he was assigned were anchored in Da Nang Harbor, the evaporative water systems remained on line which contaminated the water. The Veteran notes that the water was used for cooking, bathing, drinking, and washing clothes. Alternatively, the Veteran contends that he has had high blood pressure since service, as a result of the conditions and pressure he experienced in Vietnam, including the heat, type of work he did, and the threats to his safety. 

The Board notes that while hypertension is not on the list of those eligible for presumptive service connection as a result of Vietnam service, service connection may be granted on a direct basis if the evidence supports such a grant. See Combee v. Brown, 34 F.3d 1039, 1043-44 (Fed. Cir. 1994).

As an initial matter, although the Veteran has not received an examination related to his hypertension, the Board finds that an examination is not warranted because there is neither evidence of in-service incurrence or continuity of symptoms since service. Therefore, it is insufficient to trigger VA’s duty to assist by providing a medical opinion regarding service connection. See McLendon v. Nicholson, 20 Vet. App. 79 (2006); see also Waters v. Shinseki, 601 F.3d 1274 (Fed. Cir. 2010).

The Veteran’s STRs, including his entrance and separation examinations, are negative for any complaints, treatment, or diagnosis related to high blood pressure or hypertension. Diastolic blood pressure readings throughout the Veteran’s active service, and in the years immediately thereafter, were consistently below 90mm and systolic blood pressure readings were consistently below 160mm. See 38 C.F.R. § 4.104, DC 7101, Note 1 (defining hypertension for VA purposes as diastolic blood pressure predominantly 90mm or greater, and isolated systolic hypertension as systolic pressure predominantly 160mm or greater with a diastolic blood pressure of less than 90mm). Specifically, the Veteran’s separation examination indicated that the Veteran had a blood pressure reading of 120/80, and a subsequent medical evaluation conducted in January 1975 indicated that the Veteran had a blood pressure reading of 136/80.

More recent medical treatment records reflect that the Veteran has received a diagnosis of essential hypertension, has been prescribed medication, and was treated for hypertension as early as 2003. 

The Veteran reported, in his VA Form 9, that he was treated with medication for high blood pressure prior to 2013, when he began treatment with VA. The Veteran noted that VA indicated that he had high blood pressure and treated him with multiple medications. 

The Veteran submitted a statement from his treating physician, received by VA in July 2014, which indicates that the Veteran had uncontrolled blood pressure. The physician noted that the Veteran has been under his care since December 2013, and often had elevated blood pressure readings. 

A July 2014 Agent Orange registry examination indicated that the Veteran had hypertension since 1984. 

Based on the evidence of record, the Board is unable to attribute the Veteran’s hypertension to his active service. There is no evidence that hypertension was present during the Veteran’s period of active duty or manifested to a compensable degree within one year of separation. Indeed, diastolic blood pressure readings were below 90mm and systolic blood pressure readings were measured below 160mm at his separation from the military in 1972 and later in 1975. 

The earliest medical evidence of record indicating treatment for hypertension is over 30 years after separation from service. Even considering the Veteran’s statements at his Agent Orange registry examination that he received treatment for hypertension in 1984, this is still more than a decade after his separation from service. The Board notes that, although not a dispositive factor, the passage of time between the Veteran’s discharge and an initial diagnosis for the claimed disorder is one factor that weighs against the Veteran’s claim. Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000). 

Moreover, there is no probative medical opinion of record indicating that the Veteran’s hypertension was incurred in or otherwise related to active service, and there is no competent medical or lay evidence demonstrating continuity of symptoms since service. 

The Board has considered the contentions of the Veteran that his hypertension had its onset in service. The Veteran is considered competent to report the observable manifestations of his claimed disability. Layno v. Brown, 6 Vet. App. 465 (1994). However, to the extent that such assertions purport to establish a diagnosis or the etiology of any such disability, such assertions do not provide persuasive support for the claim, as the Veteran is not shown to possess the medical training to render competent opinions about such complex medical matters. See Davidson, 581 F. 3d at 1313; Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F. 3d 1331 (Fed. Cir. 2006).

In summary, the record establishes that hypertension was not present during the Veteran’s active service nor was it manifest to a compensable degree within one year of separation from active service. Moreover, the record contains no indication that the Veteran’s current hypertension is causally related to his active service or any incident therein. Thus, the Board finds that the preponderance of the evidence is against a grant of service connection for hypertension. In reaching this conclusion, the Board has considered the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the Veteran’s claim, that doctrine is not applicable, and service connection must be denied. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).

REASONS FOR REMAND

Veterans who served in Vietnam between January 9, 1962, and May 7, 1975, are presumed to have been exposed to herbicide agents, such as Agent Orange, unless there is affirmative evidence to the contrary. 38 U.S.C. § 1116(a)(1); 38 C.F.R. §§ 3.307(a)(6)(iii). In Procopio v. Wilkie, the Federal Circuit held that the phrase “the Republic of Vietnam” included the 12 nautical mile territorial sea of Vietnam. 913 F.3d 1371 (Fed. Cir. 2019) (en banc). As a result, the presumption of exposure to herbicide agents extends to veterans who served within that area, and such veterans are entitled to presumptive service connection under 38 U.S.C. § 1116, so long as they meet the section’s other requirements. 

The Veteran contends that he is entitled to service connection for diabetes mellitus type II due to exposure to herbicide agents, including Agent Orange, during his service in Vietnam. Additionally, the Veteran contends that he is entitled to service connection for kidney disease as secondary to diabetes mellitus type II. 

Specifically, the Veteran contends that he was assigned to two ships, the USS O’Brien and the USS Piedmont, that patrolled the waters within close proximity to the Vietnam coast. The Veteran reported that the USS O’Brien engaged in fire support missions up and down the coast of South Vietnam, during which times, the ship was three to five miles off the shore. The Veteran noted that the ship he was aboard was “well within the 12 mile territorial waters of South Vietnam on many occasions.” The Veteran indicated that the five inch deck guns used on these missions only had a range of 10 miles. The Veteran also claims that, on another occasion, his ship was anchored in a small cove approximately 300 to 400 yards off the shore of Vietnam. Finally, the Veteran indicated that he was sent to Cam Rann Bay, where the waters were a reddish-brown color, to offload supplies to river boats.

Service connection for diabetes mellitus type II.

The Board finds a duty to assist error occurred prior to the May 2018 opt-in to the RAMP program such that remand is warranted to correct the deficiencies. VA’s duty to assist includes assisting the Veteran in the procurement of relevant records. 38 U.S.C. § 5103A; 38 C.F.R. § 3.159(c). Here, the RO failed to undertake any development concerning whether the vessels, to which the Veteran was assigned, were in the territorial waters of Vietnam, which Procopio held is included in the definition of the Republic of Vietnam. 913 F.3d at 1379.

Certain listed medical conditions, such as diabetes mellitus type II, may be granted service connection on a presumptive basis due to such exposure. 38 C.F.R. § 3.309(e). Thus, further development is necessary to determine whether these ships were within the 12 nautical mile territorial sea of Vietnam before the Board may render a decision in the instant case.

Service connection for chronic kidney disease.

As the issue of entitlement to service connection for chronic kidney disease may be impacted by the above development, the issues are inextricably intertwined and any decision on this claim would be premature. See Harris v. Derwinski, 1 Vet. App. 180, 183 (1991). The claim of entitlement to service connection for chronic kidney disease is therefore also remanded pending resolution of the intertwined claim for service connection for diabetes mellitus type II.

The matter is REMANDED for the following action:

Obtain any outstanding military personnel records and determine whether the Veteran was within the 12 nautical mile territorial sea of Vietnam during his period of active service. 

 

THOMAS OSHAY

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD D. Hite, Associate Counsel