﻿Citation Nr: AXXXXXXXX
Decision Date: 11/29/19 Archive Date: 11/29/19

DOCKET NO. 190515-8891
DATE: November 29, 2019

ORDER

Entitlement to service connection for a sinus disability, claimed as chronic sinusitis and diagnosed as allergic rhinitis, is granted.

Entitlement to service connection for a lumbar spine disability is granted.

Entitlement to service connection for fibromyalgia is denied.

Entitlement to service connection for chronic fatigue syndrome is denied.

REMANDED

Entitlement to service connection for a cervical spine disability is remanded.

FINDINGS OF FACT

1. Resolving reasonable doubt in the Veteran’s favor, his allergic rhinitis is at least as likely as not related to environmental exposure while deployed to Iraq. 

2. Resolving reasonable doubt in the Veteran’s favor, his lumbar spine disability is at least as likely as not related to the repetitive trauma of parachute jumps in infantry training during service.

3. The preponderance of the evidence of record is against finding that the Veteran has had fibromyalgia at any time during or approximate to the pendency of the claim.

4. The preponderance of the evidence of record is against finding that the Veteran has had chronic fatigue syndrome at any time during or approximate to the pendency of the claim.

CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for allergic rhinitis, claimed as chronic sinusitis, have been met. 38 U.S.C. §§ 1101, 1110, 1111, 1112, 1113, 1117, 1118, 1131, 1137, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309 (2017).

2. The criteria for entitlement to service connection for a lumbar spine disability have been met. 38 U.S.C. §§ 1101, 1110, 1111, 1112, 1113, 1117, 1118, 1131, 1137, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309 (2017).

3. The criteria for entitlement to service connection for fibromyalgia have not been met. 38 U.S.C. §§ 1101, 1110, 1111, 1112, 1113, 1117, 1118, 1131, 1137, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309 (2017).

4. The criteria for entitlement to service connection for chronic fatigue syndrome have not been met. 38 U.S.C. §§ 1101, 1110, 1111, 1112, 1113, 1117, 1118, 1131, 1137, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309 (2017).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from December 2005 to September 2006. As discussed below, there may be additional periods of active duty, as well as active duty for training (ACDUTRA) and inactive duty for training (INACDUTRA).

This matter comes to the Board of Veteran’s Appeals (Board) from an April 2019 rating decision which, in pertinent part, denied service connection for chronic sinusitis, lumbar and cervical spine disabilities, fibromyalgia, and chronic fatigue syndrome. In May 2019, the Veteran timely appealed this rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction. 

The Board notes that when a claimant makes a claim, he is seeking service connection for symptoms regardless of how those symptoms are diagnosed or labeled. As such, the Board has recharacterized the issue as one of entitlement to service connection for a sinus disability, claimed as chronic sinusitis. See Clemons v. Shinseki, 23 Vet. App. 1, 5 (2009).

The Board further notes that entitlement to service connection for posttraumatic stress disorder is also on appeal from the April 2019 rating decision; however, that issue will be addressed in a separate decision. 

The appellant filed a claim of entitlement to service connection for cephalgia in May 2018. The RO reconsidered and continued to develop the claim after an October 2018 rating decision. However, the AOJ did not adjudicate the issue of service connection for cephalgia in the April 2019 rating decision. Therefore, the Board cannot adjudicate that issue. The appellant may resubmit the claim to the AOJ or notify the AOJ that the issue is still pending.

Service connection

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303(a). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Service connection generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). The U.S. Court of Appeals for Veterans Claims (Court) has held that “Congress specifically limits entitlement to service-connected disease or injury to cases where such incidents have resulted in a disability. In the absence of proof of a present disability, there can be no valid claim.” Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992); see also Rabideau v. Derwinski, 2 Vet. App. 141, 143-44 (1992).

Where the evidence shows a “chronic disease” in service or “continuity of symptoms” after service, the disease shall be presumed to have been incurred in service. For the showing of a “chronic” disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. With a chronic disease as such in service, subsequent manifestations of the same chronic disease at any later date, however remote, are service-connected, unless clearly attributable to intercurrent causes. If a condition noted during service is not shown to be chronic, then generally, a showing of “continuity of symptoms” after service is required for service connection. 38 C.F.R. § 3.303(b).

Additionally, where a veteran served ninety days or more of active service, and certain chronic diseases become manifest to a degree of 10 percent or more within one year after the date of separation from such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. 38 U.S.C. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309(a). While the disease need not be diagnosed within the presumption period, it must be shown, by acceptable lay or medical evidence, that there were characteristic manifestations of the disease to the required degree during that time. Id.

Service connection may be established for a Persian Gulf Veteran who exhibits objective indications of chronic disability that cannot be attributed to any known clinical diagnosis, but instead results from an undiagnosed illness that became manifest either during active service in the Southwest Asia theater of operations during the Persian Gulf War, or to a degree of 10 percent or more not later than December 31, 2021. 38 C.F.R. § 3.317(a)(1)(i). A “Persian Gulf Veteran” is one who served in the Southwest Asia theater of operations during the Persian Gulf War. Id. 

Objective indications of a chronic disability include both “signs,” in the medical sense of objective evidence perceptible to an examining physician, and other, non-medical indicators that are capable of independent verification. Disabilities that have existed for six months or more and disabilities that exhibit intermittent episodes of improvement and worsening over a 6-month period will be considered chronic. The 6-month period of chronicity will be measured from the earliest date on which the pertinent evidence establishes that the signs or symptoms of the disability first became manifest. A disability referred to in this section shall be considered service-connected for the purposes of all laws in the United States. 38 C.F.R. § 3.317(a)(2)-(5).

Effective March 1, 2002, the law affecting compensation for disabilities occurring in Persian Gulf War Veterans was amended. 38 U.S.C. §§ 1117, 1118. These changes revised the term “chronic disability” to “qualifying chronic disability,” and involved an expanded definition of “qualifying chronic disability” to include: (a) an undiagnosed illness, (b) a medically unexplained chronic multi-symptom illness (such as chronic fatigue syndrome, fibromyalgia, and irritable bowel syndrome) that is defined by a cluster of signs or symptoms, or (c) any diagnosed illness that the Secretary determines, in regulations, warrants a presumption of service connection. 38 U.S.C. § 1117(a)(2)(B); 38 C.F.R. § 3.317. The term “medically unexplained chronic multi symptom illness” means a diagnosed illness without conclusive pathophysiology or etiology, that is characterized by overlapping symptoms and signs and has features such as fatigue, pain, disability out of proportion to physical findings, and inconsistent demonstration of laboratory abnormalities. 38 C.F.R. § 3.317(a)(2)(ii). Chronic multi symptom illnesses of partially understood etiology and pathophysiology, such as diabetes and multiple sclerosis, will not be considered medically unexplained. Id. 

With claims based on undiagnosed illness, the Veteran is not required to provide competent evidence linking a current disability to an event during service. Gutierrez v. Principi, 19 Vet. App. 1 (2004). Signs or symptoms that may be a manifestation of an undiagnosed illness or a chronic multi-symptom illness include: fatigue, unexplained rashes or other dermatological signs or symptoms, headache, muscle pain, joint pain, neurological signs and symptoms, neuropsychological signs or symptoms, signs or symptoms involving the upper or lower respiratory system, sleep disturbances, gastrointestinal signs or symptoms, cardiovascular signs or symptoms, abnormal weight loss, and menstrual disorders. 38 U.S.C. § 1117(g); 38 C.F.R. § 3.317(b).

Section 1117(a) of Title 38 of the United States Code authorizes service connection on a presumptive basis only for disability arising in Persian Gulf Veterans due to “undiagnosed illness” and may not be construed to authorize presumptive service connection for any diagnosed illness, regardless of whether the diagnosis may be characterized as poorly defined. VAOPGCPREC 8-98 (Aug. 3, 1998). Compensation may be paid under 38 C.F.R. § 3.317 for disability which cannot, based on the facts of the particular Veteran’s case, be attributed to any known clinical diagnosis. The fact that the signs or symptoms exhibited by the Veteran could conceivably be attributed to a known clinical diagnosis under other circumstances not presented in the particular Veteran’s case does not preclude compensation under § 3.317. Id. 

In rendering a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990).

When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the veteran. See 38 U.S.C. § 5107 (2012); 38 C.F.R. § 3.102 (2017).

Credibility of the Veteran

The Board notes that in May 2018, the Veteran submitted a copy of his DD Form 214 which reflects he is in receipt of a Combat Action Ribbon. “Combat Action Ribbon” is located at the end of the paragraph and the font is slightly larger and darker than the remaining paragraph. The DD Form 214 obtained by the VA as part of the Veteran’s official personnel records does not reflect that the Veteran is in receipt of a Combat Action Ribbon. 

A February 2019 VA psychiatric examination shows that when questioned about this inconsistency, the Veteran reported that he was considered for a Combat Action Ribbon but separated before one was given. When the examiner advised the Veteran that the RO could initiate an investigation into whether the Combat Action Ribbon was authentic, the Veteran admitted the one he submitted looked fraudulent and asked “[c]an we just make sure we don’t submit that one DD 214?... the fraudulent one?”

In light of this evidence, the Board gives little probative weight to the Veteran’s assertions concerning the nature and etiology of his disabilities. See Macarubbo v. Gober, 10 Vet. App. 388 (1997) (holding that the credibility of lay evidence can be affected and even impeached by inconsistent statements, internal inconsistency of statements, inconsistency with other evidence of record, facial implausibility, bad character, interest, bias, self-interest, malingering, desire for monetary gain, and witness demeanor).

1. Entitlement to service connection for a sinus disability, claimed as chronic sinusitis.

The Veteran contends that service connection is warranted for a sinus disability. 

The Board concludes that the Veteran has a current sinus disability that began during or is otherwise related to service. 38 U.S.C. §§ 1110, 1131, 5107(b); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); 38 C.F.R. § 3.303(a). 

A February 2019 VA examination report shows that the examiner diagnosed the Veteran with allergic rhinitis. 

Thus, the question becomes whether the current disability is related to service. On this question there is probative evidence for and against the claim. 

The Veteran’s service and post-service treatment records are silent for complaints of or treatment for a sinus disability. 

Evidence that is neither for or against the claim includes a May 2018 private opinion of P.Y, a chiropractor. The clinician diagnosed the Veteran with chronic sinusitis after examination and opined that the chronic sinusitis was at least as likely as not directly and causally related to Gulf War syndrome and the Veteran’s service. However, there is no indication that the clinician reviewed the claims file, to include the Veteran’s service treatment and personnel records. Instead, the statement appears to be based on the Veteran’s self-reported medical history. 

Evidence in favor of the claim includes a February 2019 VA examination report. The examiner indicated that the symptoms described by the Veteran during the examination were consistent with allergic rhinitis. The Veteran reported environmental exposures to gasoline fumes, sand storms occurring once a week, and burn pits. The Veteran further reported his symptoms began during service and had continued since service and worsened the facial pain from an injury he sustained to his face during service. After examining the Veteran and reviewing the claims file, the examiner diagnosed the Veteran with allergic rhinitis. The examiner explained that the medical literature addressing the etiology and pathophysiology of allergic rhinitis supported that the onset of symptoms as described by the Veteran were plausibly related to the geographic environmental triggers encountered in the Gulf. Thus, the examiner opined that the Veteran’s allergic rhinitis was at least as likely as not related to an exposure event experienced by the Veteran during his service in the Gulf. 

The Board gives significant probative weight to the February 2019 VA examiner’s opinion as it is based on a review of the claims file and review of the medical literature, examination of the Veteran, and expresses sound reasoning for its conclusion. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008). Importantly in this case, the opinion is based on an objective examination of the Veteran and review of the claims file, rather than relying solely on the Veteran’s self-reported history. 

The Board has found the Veteran to be not credible and a review of the evidence shows that the Veteran exaggerates injuries and events that occurred during his service. However, a review of the Veteran’s service treatment records shows that the Veteran reported blunt force trauma to his face in a June 2006 dental record and environmental exposure to sand on an August 2006 post-deployment medical examination. Thus, at least some of the Veteran’s self-reported history as reported to the February 2019 VA examiner is supported by his service treatment records. 

Upon review of the record, the Board finds the evidence to at least be in equipoise as to whether the Veteran’s current allergic rhinitis is related to service. Accordingly, after resolving all doubt in favor of the Veteran, the Board finds that service connection for allergic rhinitis is warranted. 38 U.S.C. § 5107; 38 C.F.R. § 3.102. 

2. Entitlement to service connection for a lumbar spine disability.

The Veteran contends that service connection is warranted for a lumbar spine disability. 

The Board concludes that the Veteran has a current disability that began during or is otherwise related to service. 38 U.S.C. §§ 1110, 1131, 5107(b); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); 38 C.F.R. § 3.303(a). 

A February 2019 VA examination report shows that the examiner diagnosed the Veteran with lumbosacral strain. Thus, the question becomes whether the current disability is related to service. On this question there is probative evidence for and against the claim. 

The Veteran’s service and post-service treatment records are silent for complaints of or treatment for low back pain. The Veteran’s military personnel records reflect that he received his parachutist insignia. 

Evidence neither for or against the claim includes the May 2018 private opinion of P.Y, a chiropractor. The clinician diagnosed the Veteran with low back syndrome after examination and opined that the low back syndrome was at least as likely as not directly and causally related to Gulf War syndrome and the Veteran’s service. However, there is no indication that the clinician reviewed the claims file, to include the Veteran’s service treatment records. Instead, the statement appears to be based on the Veteran’s self-reported medical history. Additionally, the clinician did not provide an adequate rationale or basis for the opinion. 

The evidence in favor of the claim includes a February 2019 VA examination report. The Veteran reported low back pain with onset while he was deployed in Iraq. He attributed his back pain to the rigors of service, including carrying heavy equipment, wearing Kevlar helmets and vests, and jumping from helicopters. He reported self-treating his low back pain with over-the-counter medications, stretching, and walking. After examining the Veteran and reviewing the claims file, the examiner noted that the Veteran had received his parachutist insignia. The examiner diagnosed the Veteran with mild lumbosacral strain and found that a developmental anomaly noted on his imaging study was likely a normal congenital variant. The examiner considered the absence of complaints of or treatment for low back pain since service but opined that the Veteran’s lumbosacral strain was at least as likely as not incurred in or caused by the repetitive trauma of parachute jumps in infantry training during service. 

The Board gives significant probative weight to the February 2019 VA examiner’s opinion as it is based on a review of the claims file, examination of the Veteran, and expresses sound reasoning for its conclusion. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008). Importantly in this case, the opinion is based on an objective examination of the Veteran and review of the claims file, rather than relying solely on the Veteran’s self-reported history.

Upon review of the record, the Board finds the evidence to at least be in equipoise as to whether the Veteran’s current lumbosacral strain is related to service. Accordingly, after resolving all doubt in favor of the Veteran, the Board finds that service connection for a lumbar spine disability is warranted. 38 U.S.C. § 5107; 38 C.F.R. § 3.102. 

3. Entitlement to service connection for fibromyalgia.

The Veteran contends that service connection is warranted for fibromyalgia. 

The question for the Board is whether the Veteran has a current disability that began during service or is at least as likely as not related to an in-service injury or event. 

The Board concludes that the Veteran does not have a current diagnosis of fibromyalgia and has not had one at any time during the pendency of the claim or recent to the filing of the claim. Romanowsky v. Shinseki, 26 Vet. App. 289, 294 (2013); McClain v. Nicholson, 21 Vet. App. 319, 321 (2007). 

Turning to the evidence of record, the Veteran’s service treatment records are silent for complaints of or treatment for fibromyalgia or joint pain. 

In a May 2018 letter, a private chiropractor, P.Y., diagnosed the Veteran with fibromyalgia and opined that it was as likely as not directly and causally related to Gulf War syndrome and the Veteran’s military service. 

A February 2019 VA Gulf War and chronic fatigue examination report reflects that the Veteran stated he had pain in his neck, back, wrists, knees, and ankles. After reviewing the claims file and examining the Veteran, the examiner found that the Veteran’s service treatment records were silent for complaints of or treatment for fibromyalgia. Additionally, the examination was negative for fibromyalgia. The examiner noted that while P.Y. diagnosed the Veteran with fibromyalgia in May 2018, this diagnosis was rendered in the absence of requisite medical diagnostic evaluation. Thus, the February 2019 examiner concluded that, at the time of the examination, the Veteran did not have an evidence-based, confirmed diagnosis of fibromyalgia or any diagnosed illness for which no etiology was established and that any indication for Gulf War syndrome was rendered moot. 

After a review of the evidence of record, the Board finds that the competent and credible evidence of record does not support the Veteran having a current diagnosis of fibromyalgia.

As to the May 2018 private opinion, there is no indication that the clinician performed any diagnostic tests or reviewed the claims file, to include the Veteran’s service treatment records. Instead, the statement appears to be based on the Veteran’s self-reported medical history. Furthermore, the May 2018 clinician noted that the intent of the examination and report was to assist the Veteran with defining and explaining any applicable injuries or illnesses on which benefits would be applied for.

As discussed above, the Board has found the Veteran to be not credible and gives little probative weight to the Veteran’s assertions concerning the nature and etiology of his disabilities. The Board further finds that the Veteran is not competent to provide a diagnosis in this case. The issue is medically complex, as it requires specialized medical education and the ability to interpret complicated diagnostic medical testing. Jandreau v. Nicholson, 492 F.3d 1372, 1377, 1377 n.4 (Fed. Cir. 2007). 

Consequently, the Board gives more probative weight to the February 2019 VA examiner’s opinion as it is based on a review of the claims file, examination of the Veteran, and expresses sound reasoning for its conclusion. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008).

The Veteran has not presented competent and credible evidence that he currently suffers from fibromyalgia or muscle and joint pain. The most fundamental requirement for any claim for service connection is that the Veteran must have proof of the condition claimed. See Degmetich v. Brown, 8 Vet. App. 208 (1995); 104 F.3d 1328 (1997) (indicating VA compensation only may be awarded to an applicant who has disability existing on the date of application, not for past disability); McClain v. Nicholson, 21 Vet. App. 319 (2007) (further clarifying that this requirement of current disability is satisfied when the claimant has the disability at the time the claim for VA disability compensation is filed or during the pendency of the claim and that a claimant may be granted service connection even though the disability resolves prior to VA’s adjudication of the claim). Congress has specifically limited entitlement for service-connected disease or injury to cases where such incidents have resulted in actual disability. Brammer v. Derwinski, 3 Vet. App. 223 (1992); Rabideau v. Derwinski, 2 Vet. App. 141 (1992); Gilpin v. Brown, 155 F.3d 1353 (Fed. Cir. 1998). A current disability means a disability shown by competent and credible evidence to exist. Chelte v. Brown, 10 Vet. App. 268 (1997).

Without a current diagnosis of fibromyalgia, the preponderance of the evidence is against the claim, meaning the benefit-of-the-doubt doctrine does not apply. 38 U.S.C. § 5107 (b) (2012); 38 C.F.R. § 4.3 (2017). See also Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990). Accordingly, the claim must be denied.

4. Entitlement to service connection for chronic fatigue syndrome.

The Veteran contends that service connection is warranted for chronic fatigue syndrome. 

The question for the Board is whether the Veteran has a current disability that began during service or is at least as likely as not related to an in-service injury or event. 

The Board concludes that the Veteran does not have a current diagnosis of chronic fatigue syndrome and has not had one at any time during the pendency of the claim or recent to the filing of the claim. Romanowsky v. Shinseki, 26 Vet. App. 289, 294 (2013); McClain v. Nicholson, 21 Vet. App. 319, 321 (2007). 

Turning to the evidence of record, the Veteran’s service treatment records are silent for complaints of or treatment for fatigue. 

In a May 2018 letter, a private chiropractor, P.Y., diagnosed the Veteran with chronic fatigue syndrome and opined that it was as likely as not directly and causally related to Gulf War syndrome and the Veteran’s military service. 

A February 2019 VA Gulf War and chronic fatigue examination report reflects that the Veteran stated he would get tired, but denied fatigue. After reviewing the claims file and examining the Veteran, the examiner found that the Veteran’s service treatment records were silent for complaints of or treatment for chronic fatigue syndrome. Additionally, the examination was negative for chronic fatigue syndrome. The examiner noted that while P.Y. diagnosed the Veteran with chronic fatigue syndrome in May 2018, this diagnosis was rendered in the absence of requisite medical diagnostic evaluation. Thus, the February 2019 examiner concluded that, at the time of the examination, the Veteran did not have an evidence-based, confirmed diagnosis of chronic fatigue syndrome or any diagnosed illness for which no etiology was established and that any indication for Gulf War syndrome was rendered moot.

After a review of the evidence of record, the Board finds that the competent and credible evidence of record does not support the Veteran having a current diagnosis of chronic fatigue syndrome.

As to the May 2018 private opinion, there is no indication that the clinician performed any diagnostic tests or reviewed the claims file, to include the Veteran’s service treatment records. Instead, the statement appears to be based on the Veteran’s self-reported medical history. Furthermore, the May 2018 clinician noted that the intent of the examination and report was to assist the Veteran with defining and explaining any applicable injuries or illnesses on which benefits would be applied for.

As discussed above, the Board has found the Veteran to be not credible and gives little probative weight to the Veteran’s assertions concerning the nature and etiology of his disabilities. The Board further finds that the Veteran is not competent to provide a diagnosis in this case. The issue is medically complex, as it requires specialized medical education and the ability to interpret complicated diagnostic medical testing. Jandreau v. Nicholson, 492 F.3d 1372, 1377, 1377 n.4 (Fed. Cir. 2007). 

Consequently, the Board gives more probative weight to the February 2019 VA examiner’s opinion as it is based on a review of the claims file, examination of the Veteran, and expresses sound reasoning for its conclusion. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008).

The Veteran has not presented competent and credible evidence that he currently suffers from fatigue or chronic fatigue syndrome. The most fundamental requirement for any claim for service connection is that the Veteran must have proof of the condition claimed. See Degmetich v. Brown, 8 Vet. App. 208 (1995); 104 F.3d 1328 (1997) (indicating VA compensation only may be awarded to an applicant who has disability existing on the date of application, not for past disability); McClain v. Nicholson, 21 Vet. App. 319 (2007) (further clarifying that this requirement of current disability is satisfied when the claimant has the disability at the time the claim for VA disability compensation is filed or during the pendency of the claim and that a claimant may be granted service connection even though the disability resolves prior to VA’s adjudication of the claim). Congress has specifically limited entitlement for service-connected disease or injury to cases where such incidents have resulted in actual disability. Brammer v. Derwinski, 3 Vet. App. 223 (1992); Rabideau v. Derwinski, 2 Vet. App. 141 (1992); Gilpin v. Brown, 155 F.3d 1353 (Fed. Cir. 1998). A current disability means a disability shown by competent and credible evidence to exist. Chelte v. Brown, 10 Vet. App. 268 (1997).

Without a current diagnosis of chronic fatigue syndrome, the preponderance of the evidence is against the claim, meaning the benefit-of-the-doubt doctrine does not apply. 38 U.S.C. § 5107 (b) (2012); 38 C.F.R. § 4.3 (2017). See also Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990). Accordingly, the claim must be denied.

REASONS FOR REMAND

The only DD Form 214 of record shows active service from December 2005 to September 2006. However, a review of the record reflects active service prior to December 2005. Upon remand, the Veteran’s complete military personnel records should be obtained, including missing DD Forms 214 or documents showing dates of ACDUTRA and INACDUTRA. 

1. Entitlement to service connection for a cervical spine disability is remanded.

The issue of entitlement to service connection for a cervical spine disability is remanded to correct a duty to assist error that occurred prior to the April 2019 rating decision on appeal. 

The Agency of Original Jurisdiction (AOJ) obtained a February 2019 medical opinion prior to the April 2019 rating decision on appeal. However, this medical opinion does not provide an adequate rationale regarding whether the Veteran has a current disability that had its onset in service or is otherwise related to service. 

The matter is REMANDED for the following actions:

1. Obtain the Veteran’s complete service personnel records, to include all missing DD Forms 214 or documents showing dates of ACDUTRA and INACDUTRA. Document all requests for information as well as all responses in the claims file.

2. Schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology of any cervical spine disability. 

The examiner must opine whether any cervical spine disability at least as likely as not (1) began during active service, to include related to an in-service injury, event, or disease, including parachute jumps and a blunt force trauma to his face, (2) manifested within one year after discharge from service, or (3) was noted during service with continuity of the same symptomatology since service. 

The Board notes that pain can constitute disability if it results in impairment. Saunders v. Wilkie, 886 F.3d 1356, 1364-65 (Fed. Cir. 2018).

 

 

K. Parakkal

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board S. Owen, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.